UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEW HAVEN SAVINGS BANK,

        Plaintiff

v.

ALTHEA FOLLINS, HAROLD FOLLINS,
AETNA FINANCE COMPANY D/B/A
ITT FINANCIAL SERVICES,
SECOND FEDERAL FUNDING,
UNITED STATES OF AMERICA, AND
BAY STATE GAS,

        Defendants

Case No. 03-12634 - RCL

STATEMENT OF MATERIAL FACTS OF ALTHEA AND HAROLD FOLLINS
IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

    The Defendants/Plaintiffs-in-Counterclaim Althea Follins and Harold Follins (hereinafter collectively the FOLLINSES), pursuant to Rule 56.1 of the Local Rules of this Court, herewith submit their Statement of Material Facts in support of their Cross Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(b).

Parties

    1. The FOLLINSES are husband and wife and citizens of the Commonwealth of Massachusetts, residing at 22 Clark Street, Randolph, Norfolk County, MA.

    2. The New Haven Savings Bank (hereinafter the BANK), now no longer a party in this action, is a corporation with a usual place of business at 195 Church Street, New Haven CT. The BANK was the former holder of the sale proceeds which are the subject of this action (hereinafter the PROCEEDS) after foreclosing its first mortgage on the

property at 5 Lori Lane, Randolph, Massachusetts (hereinafter the "PROPERTY") formerly owned by the FOLLINSES.

3. Pacific Security, LLC (hereinafter PACIFIC SECURITY) is a Delaware Limited Liability Corporation, with a usual place of business at 211 W. Wacker Dr., Suite 710, Chicago, IL 60606.

4. Second Federal Funding Corp. (hereinafter SECOND FEDERAL) was a corporation formerly doing business in New York. It was adjudicated a bankrupt on January 8, 1992 and has been represented by Harold P. Bulan as the duly appointed Chapter 7 Trustee. On information and belief, the Chapter 7 proceeding of SECOND FEDERAL is largely inactive.

5. The United States of America, acting as the Internal Revenue Service (hereinafter the US), is appearing through the Tax Division of the Department of Justice with a mailing address at Post Office Box 55, Ben Franklin Station, Washington, DC 20044.

6. Bay State Gas (hereinafter BAY STATE) is a corporation with a service address c/o its attorneys, Ganick, O'Brien and Sarin, 161 Granite Avenue, Dorchester, MA 02124.

## UNDISPUTED MATERIAL FACTS

### Procedural History

7. The FOLLINSES are the former owners of, and the holders of the equity of redemption in, the PROPERTY.

8. The BANK realized approximately $267,000.00 following the foreclosure of its mortgage. After deducting the amount due it under the mortgage note and certain foreclosure expenses, the BANK commenced this action in interpleader, originally filed

in the Norfolk Superior Court on November 5, 2003, to resolve the conflicting claims of the parties to the net proceeds.

9. The action was then removed to this Court by the US on December 31, 2003; and with the consent of all parties, referred to a Magistrate for disposition.

10. Pursuant to a later order of this Court, the BANK paid the sum of $106,897.69 into the Registry of this Court (herein the PROCEEDS) pending the resolution of the extant claims.

1. The Claim Of Pacific Security

The Events Prior to the May 13, 2004 Assignments

11. On September 22, 1987, the FOLLINSES entered into a loan transaction with Aetna Finance Company d/b/a/ ITT Financial Services (hereinafter AETNA/ITT) pursuant to which they borrowed $43,280.71. [Affidavit of FOLLINSES, ¶ 5]

12. To evidence and secure the loan, respectively, the FOLLINSES executed and delivered to AETNA/ITT a so-called "Disclosure Statement, Note and Security Agreement" (hereinafter the NOTE) and a second mortgage on the PROPERTY (hereinafter the MORTGAGE). [Affidavit of FOLLINSES, ¶¶6-7; Affidavit of Christopher Foreman, ¶¶5 and 6 and Exhibits "A" and "B" thereto]

13. The signatures of the FOLLINSES on the NOTE were witnessed by Leslie Saunders and Diane Duarte, both of whom were employees of AETNA/ITT who worked at its Rhode Island Office where the FOLLINSES signed the NOTE and MORTGAGE. [Affidavit of FOLLINSES, ¶8]

14. Payments were made by the FOLLINSES on the NOTE until May 18, 1993 after which no further payments were made. [ Affidavit of FOLLINSES, ¶9; Affidavit of Christopher Foreman, ¶16 and Exhibit "G" Payment History]

15. On information and belief, pursuant to an Asset Purchase Agreement and Bill of Sale, both dated March 31, 1995 (hereinafter collectively the 1995 PURCHASE AGREEMENT), AETNA/ITT sold the NOTE and MORTGAGE to Transamerica Financial Services (hereinafter TFS). [See January 30, 1998 Power of Attorney, Affidavit of Christopher Foreman, Exhibit "E."][1]

16. Shortly thereafter, in June of 1995, the FOLLINSES filed a bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts. [Affidavit of FOLLINSES, ¶10; Notice of Commencement of Case, ¶6, Affidavit of Gordon N. Schultz, Esq., Exhibit "1."]

17. On September 18, 1995, TFS filed a Proof of Claim in that bankruptcy proceeding in the amount of $41,948.16 representing what it alleged to be the balance then due from the FOLLINSES under the NOTE (hereinafter the TFS PROOF). [See

---

[1] The 1995 Asset Purchase Agreement and Bill of Sale is referenced in this January 30, 1998 Power of Attorney which was produced in discovery by PACIFIC SECURITY. The Power purports to be executed by Computer & Equipment Leasing Corporation (hereinafter C&E), claiming to be the successor in interest by merger to AETNA/ITT.

PACIFIC SECURITY, however, refused to produce the 1995 Asset Purchase Agreement and Bill of Sale [See ¶ 25B herein].  PACIFIC SECURITY has also not produced proof of the claimed merger between AETNA/ITT and C&E.

For purposes of this Summary Judgment Motion only — and not for trial — the FOLLINSES will assume the existence and validity of the merger and the 1995 Agreement and Bill of Sale; and that the NOTE and MORTGAGE were among the "Mortgage Loans" and Charged Off Loans" referenced in the Power of Attorney as having been transferred to TFS under the 1995 Purchase Agreement and Bill of Sale.

4

Proof of Claim, ¶7, Affidavit of Gordon N. Schultz, Esq., Exhibit "2."]

18.  On December 18, 1995, the FOLLINSES filed an Objection to the TFS PROOF; and that Objection was thereafter sustained by the Bankruptcy Court on February 26, 1996. [Affidavit of FOLLINSES, ¶11; Docket Report, Entries # 22 and #29, ¶8, Affidavit of Gordon N. Schultz, Esq., Exhibit "3."]

19. No appeal therefrom was filed by TFS within the 10 day period mandated by Bankruptcy Rule 8002.  [See Docket Report, pages 5-6, ¶9, Affidavit of Gordon N. Schultz, Esq., Exhibit "4."]

20.  Thereafter — and not until the BANK commenced this interpleader action some eight (8) years later — did either AETNA/ITT or any of its claimed assignees initiate any litigation against the FOLLINSES to pursue the recovery of any amounts claimed to be due under the NOTE. [Affidavit of FOLLINSES, ¶12]

The 2004 Assignments and PACIFIC SECURITY'S Chain of Title

21.  PACIFIC SECURITY has asserted a claim of ownership to the NOTE and MORTGAGE — and the right to the sums allegedly due thereunder — pursuant to two (2) assignments concurrently executed by Wilshire Credit Corporation (hereinafter WILSHIRE) on May 13, 2004. [See ¶¶ 3 and 4, Statement of Material Facts of PACIFIC SECURITY]

22.  In the first assignment, WILSHIRE — purporting to act as attorney for Computer & Equipment Leasing Corporation (hereinafter C&E) which claims to be the successor in interest by merger to AETNA/ITT[2] — assigned all of C&E'S "right title and interest" in

---

[2] As already noted, PACIFIC SECURITY has not produced any documents to substantiate the terms of the claimed merger and whether the merger left the NOTE and MORTGAGE unaffected.

5

and to the NOTE and MORTGAGE to Transamerica Financial Services (TFS herein) (hereinafter the 2004 TFS ASSIGNMENT). [See Affidavit of Christopher Foreman, ¶8 and Exhibit "C" thereto.]

23. Concurrently therewith, but immediately thereafter, WILSHIRE — now purporting to act as attorney for TFS — made a second assignment transferring all of TFS' "right title and interest" in and to the NOTE and MORTGAGE to PACIFIC SECURITY (hereinafter the 2004 PACIFIC SECURITY ASSIGNMENT). [See Affidavit of Christopher Foreman, ¶9 and Exhibit "D" thereto.]

24. WILSHIRE'S authority to execute these May 13, 2004 Assignments (hereinafter collectively the 2004 ASSIGNMENTS) purportedly arose from two instruments:

    A.  A December 16, 2002 "Power of Attorney Substitution" (hereinafter the 2002 POWER) — attached as an Exhibit to each of the 2004 ASSIGNMENTS and executed by PACIFIC SECURITY [See Affidavit of Christopher Foreman, ¶¶8 and 9 and Exhibits "C" and "D" thereto.]; and

    B.  A "Purchase Agreement dated as of July 29, 2002" (hereinafter the 2002 PURCHASE AGREEMENT) — referenced in the 2002 POWER itself relative to certain unspecified "Loans" purportedly sold to PACIFIC SECURITY by Transamerica Home Loan (hereinafter THL).

25. There are, however, at least five deficiencies with respect to PACIFIC SECURITY'S claimed chain of title that are evident from the instruments that it both produced and failed to produce:

    A.    The 2002 POWER does not specifically reference the FOLLINSES' NOTE and MORTGAGE — only the 2002 PURCHASE AGREEMENT

6

        of certain unspecified "Loans" pursuant to which the 2002 POWER as given [See Affidavit of Christopher Foreman, ¶¶9 and Exhibit "C"];

B.     PACIFIC SECURITY has failed to produce:

    (1) the 2002 PURCHASE AGREEMENT —precluding its ability to substantiate that the NOTE and MORTGAGE were, in fact, included within the "Loans" sold to PACIFIC SECURITY by THL thereunder. [See Affidavit of Gordon N. Schultz, Esq., ¶¶10-12 and Exhibits "5," "6," and "7."]; and

    (2) the immediately preceding purchase documentation — precluding its ability to substantiate whether, and if so, when, THL acquired the NOTE and MORTGAGE so as to verify the legitimacy of their transfer to PACIFIC SECURITY [See Affidavit of Gordon N. Schultz, Esq., ¶¶10-12 and Exhibits "5," "6," and "7."]; and

    (3) the initial 1995 PURCHASE AGREEMENT that purported to evidence the transfer of the NOTE and MORTGAGE to TFS [See Affidavit of Gordon N. Schultz, Esq., ¶¶10-12 and Exhibits "5," "6," and "7."]

C.     The 2002 POWER (signed on December 16, 2002) given to WILSHIRE appears to be an instrument executed in conjunction with a purchase and sale of the NOTE and MORTGAGE to WILSHIRE [3] but PACIFIC SECURITY has failed to provide any such purchase agreement —

---

[3] An examination of each of the 2004 ASSIGNMENTS discloses the number "606460" which is described thereon as the "Wilshire Loan Number."

7

precluding its ability to substantiate that the FOLLINSES' NOTE and MORTGAGE were sold to WILSHIRE [See Affidavit of Gordon N. Schultz, Esq., ¶¶10-12 and Exhibits "5," "6," and "7."]

26. The missing documentation is critical because the 2004 ASSIGNMENTS, by their terms, conveyed only the Assignors' "right, title, and interest" in and to the NOTE and MORTGAGE. Thus, without corroborating evidence of the underlying purchase documentation, the assignments may have transferred nothing.

27. Thus, absent PACIFIC SECURITY being able to produce (1) the 2002 PURCHASE AGREEMENT to demonstrate that the NOTE and MORTGAGE were, in fact, among the Loans sold by THL thereunder, (2) the prior purchase agreement demonstrating whether and when THL initially acquired the NOTE and MORTGAGE from TFS so as to substantiate the validity of the 2002 PURCHASE agreement, and (3) what appears to be a later 2002 purchase agreement by which WILSHIRE acquired the NOTE and MORTGAGE, the 2004 ASSIGMENTS, standing alone, are legally insufficient to support PACIFIC SECURITY'S claim of ownership.[4]

28. Indeed, in apparent recognition of these documentation deficiencies, PACIFIC SECURITY — on February 2, 2005 while this action was pending — procured a Power of Attorney from C&E — as the claimed successor to AETNA/ITT — purporting to either (i) transfer the NOTE and MORTGAGE directly to PACIFIC SECURITY or (ii)

---

[4] Even if such purchase documentation is ultimately provided, PACIFIC SECURITY would still not be able to establish its entitlement to the PROCEEDS due to the 1995 Bankruptcy Court ruling which sustained the FOLLINSES' Objection to the Proof of Claim filed by TFS. As such, the "right, title, and interest" in the NOTE and MORTGAGE that may have been ultimately assigned to PACIFIC SECURITY under the 2004 ASSIGNMENTS was worthless and conveyed no enforceable interest.

permit it to collect the balance on its behalf, thereby attempting to validate its present claim <u>nunc pro tunc</u> (hereinafter the 2005 <u>POWER</u>). [Affidavit of Christopher Foreman, ¶¶12 and 13 and Exhibit "F."].

29. For reasons addressed in the FOLLINSES Memorandum of Law, this undertaking was insufficient to effect the result desired.

2. <u>The Claim of Second Federal Funding Corp.</u>

30. SECOND FEDERAL filed an Answer to the BANK'S Complaint for Interpleader claiming to be the assignee (on July 27, 1989) of a June 6, 1989 mortgage on the PROPERTY originally granted by the FOLLINSES to Kayak Manufacturing Corp. (hereinafter KYACK) in the face amount of $18,874.80 (hereinafter the SF MORTGAGE) [See Answer of SECOND FEDERAL, ¶12(d); Affidavit of Gordon N. Schultz, ¶¶13 -14 and Exhibits "8" and "9."]

31. The SF MORTGAGE makes reference to a "Retail Installment Sales Agreement" (hereinafter the SF NOTE) for which the SF MORTGAGE was given as security. [See copy of the SF MORTGAGE and assignment attached to the Affidavit of Gordon N. Schultz as Exhibits "8" and "9."]

32. SECOND FEDERAL, however, failed to file an Answer to the FOLLINSES' Counterclaim which included allegations that SECOND FEDERAL had no claim to the PROCEEDS because it did not initiate any suit on the SF NOTE within the six (6) year Statute of Limitations period. [See Count IV of Counterclaim, ¶ 9] At this point in the litigation, that failure constitutes a binding admission.

33. Other than a copy of the SF MORTGAGE which it obtained from the Norfolk County Registry of Deeds, SECOND FEDERAL has failed and is unable to produce any

9

records of its loan transaction because, having been adjudicated a bankrupt on January 8, 1992, all of its records of the transaction were destroyed. [See Affidavit of Lost Promissory Note, Affidavit of Gordon N. Schultz, ¶15, Exhibit "10."]

34. As a result, SECOND FEDERAL has not and cannot produce (1) an original or even a copy of the SF NOTE to determine whether or not its provisions might make it subject to the 20 year period provided by G.L.c. 260, §1; (2) documentation as to what amounts were and were not paid by the FOLLINSES to establish the extent, if any, of any claimed balance due, (3) whether and, if so, when the FOLLINSES defaulted on their obligations, and (4) any litigation begun within the six (6) year limitations period that would have tolled the statute.

35. Moreover, the FOLLINSES filed a bankruptcy proceeding in June of 1995 [See ¶16 herein] at least by which time they were necessarily in default of any payment obligation to SECOND FEDERAL. That default commenced the running of the Statute of Limitations and, as of the date this action was filed, well more than six years had elapsed.

36. To that end, until the within proceeding, SECOND FEDERAL never filed an action against the FOLLINSES on the SF NOTE secured by the SF MORTGAGE. [Affidavit of the FOLLINSES, ¶12]

37. As such, as a matter of law, SECOND FEDERAL cannot meet the burdens required of it to establish a claim to the PROCEEDS.

      3.    <u>The Claim of the United States of America.</u>

38. As to the claim of the United States of America (hereinafter the UNITED STATES), the Government admits that those liens pursuant to which the Interpleader was filed have been satisfied. [See Answer, ¶12]

39. The UNITED STATES, however, has asserted a right to additional funds for certain claimed tax years that the FOLLINSES dispute and allege that they do not owe. [See Answer, ¶12]

40. The UNITES STATES, however, has failed to adequately demonstrate the basis of the FOLLINSES' alleged tax obligations and is therefore not entitled to any share of the PROCEEDS.

### 4.   The Claim of Bay State Gas

41. As to the claim of Bay State Gas (hereinafter BAY STATE), the FOLLINSES have asserted that the debt underlying the claim was fully satisfied by the FOLLINSES.[Count VI of Counterclaim, ¶12]

42. In reply, BAY STATE has failed herein to adequately demonstrate that any lien it claims to holds on the PROPERTY covers any obligation that is presently outstanding and therefore, BAY STATE has no claim to the PROCEEDS.

                Respectfully submitted,
                Althea Follins and Harold Follins
                By their attorneys

                s/Gordon N. Schultz, Esq.
                BBO #447600
                Schultz & Company
                One Washington Mall
                Boston, MA 02108
                617.723.9090
                SchultzCompany@aol.com

Dated: May 13, 2005