UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEW HAVEN SAVINGS BANK,

          Plaintiff

v.

ALTHEA FOLLINS, HAROLD FOLLINS,
AETNA FINANCE COMPANY D/B/A
ITT FINANCIAL SERVICES,
SECOND FEDERAL FUNDING,
UNITED STATES OF AMERICA, AND
BAY STATE GAS,

          Defendants

Case No. 03-12634 – RCL

MEMORANDUM OF LAW OF ALTHEA AND HAROLD FOLLINS
IN OPPOSITION TO PACIFIC SECURITY'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

The Defendants/Plaintiffs-in-Counterclaim Althea Follins and Harold Follins (hereinafter collectively the FOLLINSES), pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1 herewith submit their Memorandum of Law in Opposition to Pacific Security's Motion for Summary Judgment and in support of their Cross-Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(b).

          I.    Nature of the Summary Judgment Claim

1. The FOLLINSES bring their summary judgment proceeding for the purpose of determining their superior right — over the competing claims of the remaining Defendants — to certain proceeds (hereinafter the PROCEEDS) from the foreclosure sale of their former residence at 5 Lori Lane, Randolph, MA (hereinafter the PROPERTY) that are now being held in the Registry of this Court.

1

2. The FOLLINSES assert that they are entitled to receive the PROCEEDS unless one or more of the defendants are able to meet their burden of proof to establish that the debts secured by the mortgages or liens that each claims to hold are valid and remain enforceable; and, individually, or in the aggregate, exceed the amount of the PROCEEDS, leaving nothing for the FOLLINSES.

## II.   Statement of Material Facts

3. The FOLLINES have set forth the Statement of Material Facts upon which their Opposition and Cross-Motion is based in a companion pleading submitted herewith.

## III.   Standard of Review

4. The standards for granting or denying a summary judgment are well established and need little explication. The relative burdens of the parties — germane to the case at bar — require that the moving party bear the initial burden of demonstrating the absence of a genuine dispute of material fact. Once that occurs, the opposing party must show that there is a genuine issue for trial; or, in the absence of a factual dispute, that judgment should be entered for the opposing party as a matter of law. In all cases, a complete failure of proof concerning an essential element of either party's case renders all other facts immaterial. Celotex Corp. v. Catrett, 477 US 317.

## IV.   Argument

I.   PACIFIC SECURITY HAS FAILED TO ESTABLISH THAT IT IS THE HOLDER OF THE FOLLINSES' NOTE AND MORTGAGE.

1. To establish that it is now the present holder of the FOLLINSES' NOTE and MORTGAGE — with the requisite standing to assert its claim to the PROCEEDS — PACIFIC SECURITY must first produce competent, admissible, and credible documentation

that clearly evidences each transfer in the chain of purchase transactions from their initial holder AETNA/ITT.

2. PACIFIC SECURITY, however, has not done so.  Instead, largely assuming that status, PACIFIC SECURITY, without any analysis thereof, has merely attached several Powers of Attorney and two Assignments to its supporting Affidavit of Christopher Foreman (hereinafter the FOREMAN AFFIDAVIT) and stated {Memorandum of Lawp.4]:

> It cannot be disputed that Pacific Security, as holder of the second mortgage, is the senior lienholder among the defendants in this matter, as stated in the Complaint and the Answers filed by the various parties.

3. The FOLLINSES, however, have carefully reviewed the Exhibits to the FOREMAN AFFIDAVIT.  Close scrutiny thereof discloses that the proffered documentation of the chain of ownership from AETNA/ITT to PACIFIC SECURITY, in addition to being largely inadmissible hearsay for lack of authentication,[1] does not at all establish — with the requisite degree of certainty — that PACIFIC SECURITY is the current holder thereof with the right to enforce the obligations thereunder.[2]

4. A chronological and detailed explication of PACIFIC SECURITY'S proffered transfer documentation — and the deficiencies therein — are set forth in ¶¶ 21-27 of the FOLLINSES' Statement of Material Facts.   The FOLLINSES submit that PACIFIC SECURITY'S failure to address the deficiencies by producing the underlying purchase documentation is fatal to its claim.

---

[1] See companion Motion to Strike portions of the FOREMAN AFFIDAVIT and certain Exhibits.

[2] As PACIFIC SECURITY itself acknowledges, in a summary judgment proceeding, "the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." [Memorandum of Law, p. 3]

5. This is because the 2004 ASSIGNMENTS, by their terms, conveyed only the Assignors' "right, title, and interest" in and to the NOTE and MORTGAGE. Without the companion underlying purchase documentation to corroborate the efficacy of the 2004 ASSIGNMENTS — which documentation would include one or more specific schedules listing the NOTE and MORTGAGE among those "Loans" sold — the 2004 ASSIGNMENTS — standing alone — are inconclusive. Indeed, they transferred "nothing" if the FOLLINS' NOTE and MORTGAGE were not among the "Loans" that were actually sold.

6. PACIFIC SECURITY has conceded as much in its Pre-Trial discovery communications. On January 18, 2005, in the course of a written exchange between counsel as to the respective positions of the parties and their agreement to cooperate in the production of relevant discovery documentation, PACIFIC SECURITY'S counsel, Daniel Murphy, Esq. (hereinafter MURPHY) stated [See Affidavit of Gordon N. Schultz, Esq, ¶ 10, Exhibit "5."]:

> Assuming that the Follins [sic] loan is one of the loans sold in the purchase agreements referenced in the enclosed powers of attorney, PACIFIC SECURITY would be able to sue in the name of Aetna Finance Company d/b/a ITT Financial Services, as its successor in interest.

7. To that end, MURPHY further stated [See Affidavit of Gordon N. Schultz, Esq, ¶ 11, Exhibit "6"]:

> I have made inquiry of my client regarding the purchase agreements referenced in the powers of attorney, and will provide you with any relevant documents as soon as I receive them.

8. Thereafter, however, on February 9, 2005, MURPHY advised the FOLLINSES' counsel that PACIFIC SECURITY would not produce the relevant purchase documentation, offering what the FOLLINSES' counsel considered to be an untenable excuse: [See Affidavit of Gordon N. Schultz, Esq, ¶12, Exhibit "7."]:

> Following our last correspondence, I contacted my client to address the issues raised in your letter of January 24, 2005, and in particular, the issue of the purchase agreements mentioned in the powers of attorney previously provided to you.
>
> With regard to the purchase agreements mentioned in the powers of attorney, my client will not produce these agreements. Apparently, there are contractual confidentiality provisions regarding the release of these documents, as well as other concerns, such as providing information which may violated [sic] the Fair Debt Collection Practices Act.

9. Thereafter, in apparent recognition of these documentation deficiencies, on February 2, 2005 — well after this action began — PACIFIC SECURITY procured a Power of Attorney from C&E — the claimed successor to AETNA/ITT — purporting to permit it to collect the balance (hereinafter the 2005 POWER), thereby seeking to validate its claim to the PROCEEDS <u>nunc pro tunc.</u> [3]

10. The FOLLINSES strenuously submit that this 2005 POWER was and remains ineffective to give PACIFIC SECURITY any rights to the PROCEEDS; and must be disregarded and stricken from Rule 56 consideration for at least four (4) reasons.

11. First, any Power of Attorney, standing alone, is insufficient to transfer title to an asset. Second, given PACIFIC SECURITY'S failure to produce the one 1995 and two 2002 Purchase Agreements, it has failed to provide clear and convincing proof that C&E/AETNA/ITT still held title to the NOTE and MORTGAGE on February 2, 2005 when it executed the 2005 POWER. Indeed, given the three preceding transfers, it is far more

---

[3] In his January 18, 2005 letter to the FOLLINSES' counsel, MURPHY had also stated:

> Even were we unable to establish this [one of the loans actually sold], it would be my contention that Pacific Security would only need a power of attorney from the original payee to bring [it] within the twenty-year statute of limitations.

5

likely that C&E did not still own the NOTE and MORTGAGE in February of 2005, thereby rendering the 2005 POWER ineffective.[4]

12. Third, executing a document that is required to perfect a claimed interest <u>after</u> this interpleader litigation had already begun — and well after the expiration of the prevailing six year Statute of Limitations — is analogous to arguing that a complaint filed with a Clerk's Office — after the action had already been barred by the limitations period — would nevertheless validate and resurrect it. That is simply not the case. Any document necessary to establish PACIFIC SECURITY'S title and right to enforce the NOTE and MORTGAGE had to arise prior to the expiration of the six year limitation period. As such, the 2005 POWER must be disregarded and stricken from the summary judgment record.

II.  EVEN IF IT IS THE HOLDER OF THE NOTE AND MORTGAGE, PACIFIC SECURITY HAS FAILED TO ESTABLISH THAT IT HOLDS A VALID AND ENFORCEABLE CLAIM THEREUNDER.

   A.  <u>The Claim for Amounts Due under the NOTE and MORTGAGE Was Made by a Prior Holder and the Claim was Dismissed</u>.

13. As set forth in ¶¶ 15-20 of the FOLLINSES' Statement of Material Facts, it appears that (for purposes of this Motion) AETNA/ITT sold the NOTE and MORTGAGE to Transamerica Financial Services (herein TFS) pursuant to a March 31, 1995 Asset Purchase Agreement and Bill of Sale.

14. The FOLLINSES later filed a bankruptcy petition in June of 1995; and on September 18, 1995, TFS filed a Proof of Claim therein in the amount of $41,948.16 representing the alleged balance then due under the NOTE (hereinafter the TFS PROOF).

---

[4] Even if the 2005 POWER were effective, it would not have transferred any rights. See Argument II.A <u>infra</u>.

15. On December 18, 1995, the FOLLINSES filed an Objection to the TFS PROOF which was thereafter sustained by the Bankruptcy Court on February 26, 1996. No appeal therefrom was filed by TFS within the 10-day period mandated by Bankruptcy Rule 8002.

16. Thereafter — and not until the BANK commenced this interpleader some eight (8) years later — did either AETNA/ITT or any of its claimed assignees initiate any litigation against the FOLLINSES to recover the amounts claimed to be due under the NOTE.

17. Given these circumstances, any claim for sums due under the NOTE was extinguished by the Bankruptcy Court's action in February of 1996 — which would readily explain why no subsequent transferee of the NOTE — over the last 9.25 years — instituted suit to collect any balance thereunder or made any effort to foreclosure the MORTGAGE.

18. As such, there is no longer any valid claim to the NOTE balance for any holder of the NOTE to enforce; and therefore no claim to the PROCEEDS as the fruits of the foreclosed MORTGAGE. e.g., Geffen v. Paletz, 312 Mass. 48, 43 N.E.2d 133 (1942).[5] Consequently, PACIFIC SECURITY'S claim must be dismissed.

    B.    <u>The NOTE Was Not a Witnessed Note within the Meaning of G.L.c. 260, §1 because the NOTE Was Witnessed by the Original Payor/Holder Thereof and Not By Independent Third-Parties</u>.

19. The FOLLINSES' primary defense to PACIFIC SECURITY'S claim to the PROCEEDS is the applicability of the six year statute of limitations. This is because PACIFIC SECURITY — having only obtained the 2004 ASSIGNMENTS on May 13, 2004

---

[5] The Court stated:

> An assignment of a mortgage vests in the assignee a full legal title . . . but that title is merely a collateral security for the mortgage debt, and, if no debt exists, assignee takes only a naked title to the mortgage.

— admittedly failed to initiate any suit on the NOTE to recover the claimed balance within six (6) years of the admitted default date of May 18, 1993.

20. PACIFIC SECURITY, however, argues that it is not barred by the six (6) year period provided by G.L.c. 260, §2; but is entitled to rely upon the twenty (20) year period under G.L.c. 260, §1, Third, because:

    A.    It is an assignee of the "original payee" of the NOTE; and

    B.    The NOTE was "signed in the presence of an attesting witness."

21. The FOLLINSES submit, that PACIFIC SECURITY cannot establish either requirement for at least two reasons.

22. First, the FOLLINSES have already demonstrated that the documentation provided by PACIFIC SECURITY fails to clearly and convincingly demonstrate that it is the valid "holder" of the NOTE; and/or that those entities who preceded it in its purported chain of title either themselves had the authority to, or, in fact, did, assign and/or transfer existing and enforceable collection rights to the subject NOTE and MORTGAGE.

23. As such, PACIFIC SECURITY — contrary to its assertions on p. 6 of its Memorandum — has not "conclusively established that it is the successor-in-interest to the original payee" or that "it pursues its claims in the name of the original payee." It has failed to proffer clear and convincing evidence that it is the valid and legitimate "assignee" of the NOTE as required by G.L.c. 260, §2 and that failure is fatal to its claims herein.

24. To the same end, PACIFIC SECURITY'S claimed right based upon its recently acquired 2005 POWER fares no better. Not only was that document issued much too late to perfect its rights; but the deficiencies in documentation preclude it from establishing that C&E held any rights in the NOTE in February of 2005 when it executed the 2005 POWER.

Indeed, from the number of transfers that appear to have been made, it is reasonably clear that C&E no longer had any rights to the NOTE when it executed the 2005 POWER.

25. Second, under the authority of <u>Christopoulos v. Hemenway</u>, 3 Mass.App.Div. 32 (1951), the NOTE was not "signed in the presence of an attesting witness" within the meaning of G.L.c. 260, §2.

26. <u>Christopoulos</u> addressed the same issue that has been raised in this action. There, the defendant plead the six year statute of limitations to an action that had been commenced seven (7) years after the note was due and payable. The plaintiff asserted the applicability of the twenty (20) year period under G.L.c. 260,§1 as the note purported to be signed in the presence of an attesting witness. The trial judge concluded that the action was barred, finding for the defendant and the plaintiff appealed.

27. On appeal, the trial judge's ruling was affirmed. The basis thereof was the court's findings that the plaintiff had witnessed the note; and that, "as a matter of law, the . . . payee could not be an attesting witness to the signing of the note by the defendant." The Court went on to explain the basis of the legal principle as it had been earlier established:

> The judge's decision is most effectively supported in light of what has been held to be the purpose of the statute. "The reason of the statute, in giving greater efficacy and permanency to an attested note, and putting it on the footing of a specialty, obviously was, that it was more deliberately and formally executed, and carried a higher degree of authenticity in the means of proving its execution, by the testimony of the witness, or by proof of his handwriting." [citation omitted] That statutory purpose is scarcely observed when the payee of a promissory note undertakes to be the attesting witness of its signing by the promisor.

28. Here, it is undisputed that the two individuals who witnessed the FOLLINSES' signatures on the NOTE were employees of AETNA/ITT and, as such, were effectively "the payee" of the NOTE. As <u>Christopoulos</u> requires that any attesting witness "must be

someone other than the payee," the twenty (20) year period under G.L.c. 260, §1 is unavailable to PACIFIC SECURITY and its claim must be denied as a matter of law.

III.   SECOND FEDERAL FUNDING HAS FAILED TO ESTABLISH ANY RIGHT TO ANY PORTION OF THE PROCEEDS AS IT NEITHER HAS NOR CAN PROFER ANY RULE 56 RESPONSE TO THE FOLLINSES' SUBMISSIONS OR OTHERWISE ESTABLISH ANY RIGHT TO THE PROCEEDS.

29.  SECOND FEDERAL filed an Answer herein claiming to be the assignee of a June 6, 1989 mortgage on the PROPERTY originally granted by the FOLLINSES to Kayak Manufacturing Corp. in the face amount of $18,874.80 (hereinafter the SF MORTGAGE).

30. The SF MORTGAGE makes reference to a "Retail Installment Sales Agreement" (hereinafter the SF NOTE) for which the SF MORTGAGE was given as security.

31. SECOND FEDERAL, however, never filed an Answer to the FOLLINSES' Counterclaim which included allegations that SECOND FEDERAL had no claim to the PROCEEDS because it did not initiate any suit on the SF NOTE within the six (6) year Statute of Limitations period.  At this stage in the litigation, that failure constitutes a binding admission.

32.  Moreover, other than a copy of the SF MORTGAGE which it obtained from the Norfolk County Registry of Deeds, SECOND FEDERAL has admitted that it cannot produce any records of this loan transaction because, having been adjudicated a bankrupt on January 8, 1992, all of its records have been destroyed.

33. Indeed, in its Answer to the BANK'S Interpleader Complaint herein, SECOND FEDERAL admitted that it was "without sufficient knowledge or information" as to the issues being raised in this action.

34. As a result, SECOND FEDERAL has not and cannot produce (1) the original or any copy of the SF NOTE so as to determine whether or not it might be subject to the 20 year limitation period provided by G.L.c. 260, §1; (2) any documentation as to what amounts were and were not paid by the FOLLINSES to establish the extent, if any, of its claimed balance due, (3) any documentation as to whether, and if so, when, the FOLLINSES defaulted on their obligations, and (4) documentation as to whether any litigation had been initiated within the six (6) year limitations period that would have tolled the statute.

35. Moreover, the FOLLINSES filed a bankruptcy proceeding in June of 1995 at least by which time they were necessarily in default of any payment obligation to SECOND FEDERAL. That default commenced the running of the Statute of Limitations and, as of the date this action was filed, well more than six years had elapsed.

36. The FOLLINSES have asserted by Affidavit that, until the within proceeding, SECOND FEDERAL never filed an action against them on the SF NOTE secured by the SF MORTGAGE. This unrebutted assertion and the unanswered Affirmative Defense of the bar of the Statute of Limitations is fatal to SECOND FEDERAL'S claim.

37. As such, any claim to the PROCEEDS by SECOND FEDERAL must be rejected.

IV.  THE UNITED STATES HAS FAILED TO ESTABLISH ANY RIGHT TO ANY PORTION OF THE PROCEEDS.

38. In its Answer herein, the UNITED STATES admits that those liens which it held against the PROPERTY and pursuant to which this Interpleader was filed have been satisfied.

39. The UNITED STATES, however, has asserted claims for certain other alleged unpaid taxes that the FOLLINSES dispute and allege they do not owe, in whole or in part.

40. The UNITED STATES claims to hold statutory liens on any funds that the FOLLINSES may recover in this action but has failed to produce admissible and credible documentation to adequately demonstrate the basis of, and that the FOLLINSES owe, these additional alleged tax obligations.

41. Without such documentation, the UNITES STATES is not entitled to any share of the PROCEEDS.

V.   BAY STATE GAS HAS FAILED TO ESTABLISH ANY RIGHT TO ANY PORTION OF THE PROCEEDS.

42. In its Answer herein, BAY STATE admits that the lien which it held against the PROPERTY and pursuant to which this Interpleader was filed, for the balance allegedly due under Account 182-179-42233 has been satisfied.

43. BAY STATE, however, has asserted claims for certain other alleged obligations that the FOLLINSES dispute and allege they do not owe, in whole or in part, but BAY STATE has failed to produce admissible and credible documentation of any recorded liens for those claimed amounts.

44. Without such documentation, BAY STATE is not entitled to any of the PROCEEDS.

                Respectfully submitted

                Althea Follins and Harold Follins
                By their attorneys

                s/Gordon N. Schultz
                BBO #447600
                Schultz & Company
                One Washington Mall
                Boston, MA 02108
                617.723.9090
                SchultzCompany@aol.com

Dated: May 13, 2005