UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW HAVEN SAVINGS BANK,<br><br>          Plaintiff<br>  v.<br><br>ALTHEA FOLLINS, HAROLD FOLLINS,<br>AETNA FINANCE COMPANY D/B/A<br>ITT FINANCIAL SERVICES,<br>SECOND FEDERAL FUNDING,<br>UNITED STATES OF AMERICA, AND<br>BAY STATE GAS<br><br>          Defendants | Case No. 03-12634 – RCL |

ALTHEA AND HAROLD FOLLINSES' MOTION TO STRIKE SUPPLEMENTAL
AFFIDAVIT OF CHRISTOPHER FOREMAN IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

The Defendants/Plaintiffs-in-Counterclaim Althea and Harold Follins (hereinafter  the

FOLLINSES) hereby move to strike the "Supplemental Affidavit of Christopher Foreman in

Support of Motion for Summary Judgment" (hereinafter the "SUPPLEMENTAL

AFFIDAVIT") and the Exhibits thereto (hereinafter the NEW DOCUMENTS) filed herein

by Pacific Security, LLC (hereinafter "PACIFIC SECURITY") on June 1, 2005.

In support thereof, the FOLLINSES respectfully represent that there are both

procedural and substantive grounds for doing so, all as more particularly set forth below.

Procedural Grounds

I.      The  SUPPLEMENTAL AFFIDAVIT Was Neither Timely nor Approved.

1.  Pursuant to the Scheduling Order issued earlier in this action, PACIFIC

SECURITY'S Motion for Summary Judgement was required to be filed on or before April

30, 2005.  In furtherance thereof, on April 29, 2005, PACIFIC SECURITY timely filed its

Motion, Memorandum of Law, and the initial Affidavit of Christopher Foreman.

2.   The SUPPLEMENTAL AFFIDAVIT, however — captioned as being *in support of*

PACIFIC SECURITY'S summary judgment request — was electronically filed by

PACIFIC SECURITY on June 1, 2005 — over 30 days after the filing deadline and

without approval of the Court to do so.

3.   Pursuant to the provisions of Fed.R.Civ.P. 6(d), any affidavit that is used to support

a Rule 56 summary judgment motion must be served with the motion. Cia Petrolera

Caribe, Inc. v. Arco Carribean, Inc. 754 F.2d 404 (1st Cir. 1985).  See also Local Rule 56.1.

The caption of the SUPPLEMENTAL AFFIDAVIT clearly recites that its stated purpose is

to "support" the summary judgment request.  As such, PACIFIC SECURITY could not file

the SUPPLEMENTAL AFFIDAVIT without the Court's permission.[1]

4.   At the June 7th Status Conference — and presumably in reply hereto — counsel for

PACIFIC SECURITY argued and will argue that the SUPPLEMENTAL AFFIDAVIT was

a "reply pleading" to the FOLLINSES' Cross-Motion  for Summary Judgment; and was

thus timely filed under Local Rule 7.1 without the need for Court permission. That

argument fails for two reasons.

---

[1] When a litigant anticipates that it will not be able to timely file an affidavit at or before
the required due date, Fed.R.Civ.P. 6(b)(1) allows the litigant to seek a discretionary
enlargement of time "for cause shown" but the Court's discretion must not be exercised in
a manner that prejudices the opposing party's substantive rights. Cia Petrolera Caribe, Inc.
v. Arco Carribean, Inc. 754 F.2d 404 (1st Cir. 1985).  PACIFIC SECURITY did not avail
itself of this remedy.

Alternatively, where a litigant seeks to file an affidavit after "the expiration of the specified
period," Fed.R.Civ.P. 6(b)(2) not only requires that the litigant move the Court for
permission to do so but also meet a higher standard — that "the failure to act was the result
of excusable neglect." e.g., Davidson v. Keenan, 740 F.2d 129 (7th Cir. 1984).

.

5.   First, the SUPPLEMENTAL AFFIDAVIT was filed on June 1, 2005 — one day

after the expiration of the required 14-day response period. It was therefore still untimely.

6.   Second, and more important — because PACIFIC SECURITY holds the burden of

proof to demonstrate its ownership of, and standing to pursue the claim under, the NOTE

and MORTGAGE — the SUPPLEMENTAL AFFIDAVIT and NEW DOCUMENTS can

only be considered as supporting PACIFIC SECURITY'S position — especially since—

as addressed more fully in Section II  below — its contents and the NEW DOCUMENTS

were all known to — but purposely withheld by — PACIFIC SECURITY before receiving

the FOLLINSES' Cross-Motion and supporting papers.

7.   As such, absent leave to file, the SUPPLEMENTAL AFFIDAVIT and NEW

DOCUMENTS are not properly before the Court and must be stricken as a matter of law.

e.g.,  Wood v. Santa Barbara Chamber of Commerce, 705 F.2d 515 (9th Cir. 1983).

8.   If, however, as the FOLLINSES expect, PACIFIC SECURITY requests the Court

for permission to file the SUPPLEMENTAL AFFIDAVIT, the FOLLINSES submit that

the Court's allowance thereof  — and the introduction of the NEW DOCUMENTS

proffered thereby — would not only be improper, see Davidson, infra, but also prejudicial,

in view of the prior procedural history of this action as addressed in Argument II below.[2]

9.   Davidson, supra, presents an analogous precedent.  There, counsel for the litigants

sought to excuse their failure to act on the ground that, before the filing due date, they were

unable to locate certain nonparty witnesses whose affidavits were essential.  Rejecting that

contention, the Court concluded that the need for Affidavits from these witnesses could

---

[2] Indeed, even if the filing of the NEW DOCUMENTS had been timely, the FOLLINSES
would have moved to strike the documents on those grounds.

have been foreseen prior to the filing deadline; and in time for counsel to have requested an enlargement of time before the expiration of the filing due date.

10. Here, and as addressed in detail in Argument II below, the subject of the SUPPLEMENTAL AFFIDAVIT and the NEW DOCUMENTS were well known to PACIFIC SECURITY long before the April 29, 2005 filing date.  Indeed — and as the Court will learn below — PACIFIC SECURITY made a conscious decision <u>not</u> to produce those documents after being requested by the FOLLINSES to do so.

11. As such, on any appropriate motion, PACIFIC SECURITY will not be able to satisfy the required "excusable neglect" standard of Fed.R.Civ.P. 6(b)(2); and the SUPPLEMENTAL AFFIDAVIT and NEW EXHIBITS must necessarily be stricken as a matter of law. See, <u>Davidson v. Keenan</u>, 740 F.2d 129 (7th Cir. 1984).

II.     <u>PACIFIC SECURITY is Precluded from filing the SUPPLEMENTAL AFFIDAVIT Under Principles of Judicial Estoppel and Because it Cannot Show Excusable Neglect.</u>

12. The purpose and substance of the SUPPLEMENTAL AFFIDAVIT is to introduce into the summary judgment record what purports to be (i) a substantially redacted July 29, 2002 Purchase Agreement reflecting PACIFIC SECURITY'S acquisition of the FOLLINSES NOTE and MORTGAGE from Transamerica Home Loan and Transamerica Home Loan Trust, (ii) a October 1, 2002 Bill of Sale therefore, and (iii) a substantially redacted Exhibit "A" thereto, purportedly referencing the FOLLINSES' Account (herein collectively the NEW DOCUMENTS).

10. At all times prior to the late filing of the SUPPLEMENTAL AFFIDAVIT, however, PACIFIC SECURITY, by pleadings and correspondence between counsel, maintained that (1) it either did not have the NEW DOCUMENTS or (ii) would not produce them.

11. As such, this is the first time that the FOLLINSES have seen the NEW

DOCUMENTS.  Most important, pursuant to the Scheduling Order earlier issued in this

action, discovery closed on March 31, 2005.  Under these circumstances, the prior conduct

of PACIFIC SECURITY as to its failure to earlier disclose these documents is critical to

the proper disposition of this Motion to Strike and any opposition thereto.

12. On June 25, 2004, the FOLLINSES served PACIFIC SECURITY with a Request

for Production of Documents.  A copy is attached hereto as Exhibit "1."  The NEW

DOCUMENTS were not included among the documents produced by PACIFIC

SECURITY nor were any identified as subject to any claims of privilege or confidentiality.

13. Thereafter, on August 4, 2004 — some 10 months ago — PACIFIC SECURITY

served its so-called "required disclosures" under Fed.R.Civ.P. 26(a)(1).  A copy thereof is

attached hereto as Exhibit "2."  PACIFIC SECURITY stated in Paragraph B therein:

> A copy of all documents, data compilations, and tangible things in
> Pacific Security's possession, custody, or control, not privileged or
> protected from disclosure, which Pacific Security may use to support
> its claims or defenses is enclosed herewith.

The NEW DOCUMENTS were not included among the documents so produced; nor were

any identified as subject to any claims of privilege or confidentiality.

14.  In mid-January and early February of this year, there was an exchange of

correspondence between respective counsel. [3]  The subject thereof was the FOLLINSES'

request for, and PACIFIC SECURITY'S failure to have produced, the underlying purchase

documentation to support PACIFIC SECURITY'S "chain of title" and demonstrate that it

---

[3] These letters are Exhibits to the May 13, 2005 "Affidavit of Gordon N. Schultz, Esq. in
Opposition to Motion for Summary Judgment of Pacific Security and in Support of Cross-
Motion for Summary Judgment" (hereinafter the SCHULTZ AFFIDAVIT).

was the lawful holder of the FOLLINSES NOTE and MORTGAGE.

15.  In particular, on January 18, 2005 — before the close of discovery — MURPHY

had written to SCHULTZ and stated, in relevant part:

> Assuming that the Follins [sic] loan is one of the loans sold in the
> purchase agreements referenced in the enclosed powers of attorney,
> PACIFIC SECURITY would be able to sue in the name of Aetna Finance
> Company d/b/a ITT Financial Services, as its successor in interest.
>
> I have made inquiry of my client regarding the purchase agreements
> referenced in the powers of attorney, and will provide you with any
> relevant documents as soon as I receive them.[4]

16.  Thereafter, on February 9, 2005 — before the close of discovery — MURPHY stated

that PACIFIC SECURITY would not produce the purchase documentation, stating:

> Following our last correspondence, I contacted my client to
> address the issues raised in your letter of January 24, 2005, and
> in particular, the issue of the purchase agreements mentioned in
> the powers of attorney previously provided to you.
>
> With regard to the purchase agreements mentioned in the
> powers of attorney, my client will not produce these
> agreements.  Apparently, there are contractual confidentiality
> provisions regarding the release of these documents, as well
> as other concerns, such as providing information which may
> violated [sic] the Fair Debt Collection Practices Act.[5]

17.  Consistent therewith, PACIFIC SECURITY — pursuant to MURPHY'S January 18,

2005 letter[6] — produced a Power of Attorney (herein the 2005 POWER) from C&E — the

---

[4] SCHULTZ AFFIDAVIT, ¶¶ 10 &11, Exhibit "5."

[5] SCHULTZ AFFIDAVIT,  ¶12, Exhibit "7."

[6] MURPHY stated:

> Even were we unable to establish this [one of the loans actually sold], it would
> be my contention that Pacific Security would only need a power of attorney
> from the original payee to bring [it] within the twenty-year statute of limitations.

claimed successor to AETNA/ITT — a power which C&E had executed just a few days

earlier — on February 2, 2005 — in response to PACIFIC SECURITY'S request therefor.

18. Thus, refusing production of the requested purchase documents, PACIFIC

SECURITY chose to press its claim to the NOTE and MORTGAGE, nunc pro tunc, through

the use of a recently-acquired, "post-litigation," document.

19. Most important, not once prior to the February 9, 2005 letter from MURPHY did

PACIFIC SECURITY ever identify the NEW DOCUMENTS as being available but subject

to "contractual confidentiality provisions;" nor did PACIFIC SECURITY seek any

protective orders from the Court to legitimize its decision to withhold the documents.

20. As such — and because, as a matter of law, it was PACIFIC SECURITY'S burden

to prove that it had standing to sue as the lawful and valid holder of the NOTE and

MORTGAGE [7] — the FOLLINSES elected to forego any further discovery and pursue a

summary judgment proceeding on the existing documentary record that had then been

produced by PACIFIC SECURITY.

21. Unbeknownst to the FOLLINSES, PACIFIC SECURITY was apparently doing the

same but waited to file its summary judgment proceeding on April 29, 2005 — one day

before the close of the Scheduling Order deadline therefor and almost 30 days after the

discovery deadline had expired.[8]

---

[7] See Argument I of FOLLINSES' Reply Memorandum (to be filed on June 21, 2005).
This argument negates ¶¶5-6 of PACIFIC SECURITY'S Opposition to the FOLLINSES'
initial Motion to Strike.  Contrary to its claim therein, "whether or not Pacific Security has
demonstrated ownership of the Note and Mortgage in question" is its seminal burden and
thus far from being "immaterial."

[8] Fortunately, as the FOLLINSES had begun preparing their summary judgment
submissions, they were able to file their in-depth Memorandum of Law and the other
substantial supporting documentation within the short 14-day response deadline.

22. Moreover, as is now clear, PACIFIC SECURITY did not then submit the NEW

DOCUMENTS and the SUPPLEMENTAL AFFIDAVIT.  Both appeared for the first time

only <u>after</u> the FOLLINSES had served their Cross-Motion, Statement of Material Facts,

and Memorandum of Law, all of which set forth a detailed analysis of the "deficiencies" in

PACIFIC SECURITY'S claimed "chain of title."[9]

23. Under all of these circumstances, the Court is more than warranted in (i) striking the

SUPPLEMENTAL AFFIDAVIT and NEW DOCUMENTS, or (ii) precluding any attempt

by PACIFIC SECURITY to now request that the Court accept them, or (iii) disregarding

them as a part of the summary judgment record.  The circumstances are strikingly similar

to those in <u>Dudo v. Schaffer</u>, 91 F.R.D. 128 (E.D. PA 1981) where the Court observed:

> Here, several considerations lead me to the conclusion that Dudo's
> supplemental affidavit should not count in the determination of whether
> there is a material issue of fact for trial. First, consideration must be given
> to when the affidavit is filed.  .  .  .  In this case .  .  .  Dudo's affidavit was
> not submitted at the same time as his brief .  .  .  but after hearing and
> argument on the motion.  <u>Significantly, at argument both opposing counsel
> and the court had made plain that there was a substantial risk of summary
> judgment being entered against Dudo.</u>  .  .  .  By neglecting to submit any
> evidentiary materials until after argument .  .  .  Dudo not only failed to
> carry his burden to diligently contest the motion .  .  .  [but] he seriously
> undermined whatever credibility a contradictory affidavit might have.  In
> this regard, I note that the <u>factual matter set forth in Dudo's affidavit was
> not newly discovered material which could not have been presented prior
> to argument. .  .  .  In the instant case, all of the information in Dudo's
> affidavit was within his knowledge as of the date of filing the complaint</u> .
> .  .  .
>
> 　　　　　　　　　　　　　　　　　　　　　　　　　[emphasis added]

---

[9] Since it was PACIFIC SECURITY'S burden of proof to establish that it was the lawful
and valid holder of the NOTE and MORTGAGE, see footnote 6, it was incumbent upon
PACIFIC SECURITY to have produced these documents as a part of its initial
submissions; and its failure to do so defeats its "prima facie" summary judgment burden of
having enough evidence in the first instance to require the FOLLINSES to go forward.

Substantive Grounds

III.    The NEW DOCUMENTS are Incomplete and Therefore Legally Insufficient and Must be Disregarded.

24.    A review of the content of the SUPPLEMENTAL AFFIDAVIT and the NEW DOCUMENTS proffered thereby likewise compel preclusion.

25.    First, the proffered July 29, 2002 Purchase Agreement and its Exhibit "B" have been substantially redacted on the basis of a claim of "confidentiality."

26. Apart from the obvious concerns that arise from doing so, the FOLLINSES know of no "confidentiality grounds" that should restrict full production of the subject documents pursuant to the formal discovery and required disclosures earlier requested.    More important, PACIFIC SECURITY never sought any protective or other order from the Court to sanction its purported "claim of confidentiality."

27. As already noted, PACIFIC SECURITY was served with a Rule 34 Document Request almost one year ago (June 25, 2004); and, on August 4, 2004, produced documents in response to its mandatory disclosure requirements under Rule 26(a)(1).  At neither time did PACIFIC SECURITY identify the NEW DOCUMENTS as being available but nevertheless subject to "confidentiality" that would restrict their production; nor did it seek any protection or instructions from the Court.

28. Given PACIFIC SECURITY'S failures and refusals to produce the NEW DOCUMENTS — and their subsequent but redacted production on June 1, 2005 only after the direct challenge by the FOLLINSES in their Cross-Motion — the Court is well warranted in precluding their "partial production" now.   Moreover, neither should the Court countenance any offer by PACIFIC SECURITY for "full production" now.  It is simply too little, too late.

9

29. <u>Second</u>, PACIFIC SECURITY'S conduct also suggests that (i) there are provisions in the redacted portions of the Purchase Agreement that are inconsistent with PACIFIC SECURITY'S present claims and that (ii) the NEW DOCUMENTS may not be genuine, in whole or in some relevant part.  Indeed, in several respects, the facts set forth in the SUPPLEMENTAL AFFIDAVIT are inconsistent with the proffered NEW DOCUMENTS, to-wit:

A.  <u>First</u>, ¶8 and ¶9 of the SUPPLEMENTAL AFFIDAVIT recite, respectively, that:

> I also received with the Purchase Agreement a Bill of Sale which also had an appended Exhibit "A" that consisted of a complete list of the loans in the portfolio being purchased.
>
> Attached hereto as Exhibit "B" is a copy of the Bill of Sale, and the page from the list of loans sold reflecting the Follins loan . . . .

B.  An examination of the Purchase Agreement, however, discloses that the bill of sale that was "received with it" was "a bill of sale *in the form of* Exhibit B to this Agreement" — a term typically used to describe a then uncompleted "form" document.

C.  Indeed, the Bill of Sale attached as Exhibit "B" to the SUPPLEMENTAL AFFIDAVIT is a signed document and dated October 1, 2002 — some 3 months <u>after</u> the date of the July 29, 2002 Purchase Agreement.

D.  As such, neither the Bill of Sale attached as Exhibit "B" to the SUPPLEMENTAL AFFIDAVIT — nor its claimed "appended Exhibit A" that allegedly contained "the list of loans sold reflecting the Follins loan" — could possibly have been sent with the July 29, 2002 Purchase Agreement, rendering Mr. Foreman's testimony and the entire SUPPLEMENTAL AFFIDAVIT suspect.

E.  <u>Second</u>, attached hereto as Exhibit "3" is an October 1, 2002 "Power of

Attorney" that PACIFIC SECURITY included as Exhibit "E" to Christopher

Foreman's initial Affidavit filed herein (on April 29, 2005).

F.  This Power of Attorney — and the Bill of Sale now sought to be proffered as

"Exhibit B" to the SUPPLEMENTAL AFFIDAVIT — are (i) both related to

the July 29, 2002 Purchase Agreement, (ii) both dated October 1, 2002, and (iii)

both purportedly signed by Keith Van Damme.

G.  Given the identity of subject matter of the Power of Attorney and Bill of Sale

— bearing the same date and signed by the same person — it would reasonably

be expected that both documents would have been executed concurrently.

H.  Nevertheless, a comparison of the notary public for Mr. Van Damme's signature

on both documents discloses that the individuals are not the same person.

I.  This fact adds further suspicion to the course of proceedings in this litigation;

and well warrants the Court in refusing to accept the SUPPLEMENTAL

AFFIDAVIT and NEW DOCUMENTS at this stage of the proceeding.

WHEREFORE, the FOLLINSES request that the SUPPLEMENTAL AFFIDAVIT

and NEW DOCUMENTS be stricken or disregarded in the Summary Judgment record.

Respectfully submitted

Althea Follins and Harold Follins
By their attorneys

s/Gordon N. Schultz
BBO #447600
Schultz & Company
One Washington Mall
Boston, MA 02108
617.723.9090
Dated: June 13. 2005                    SchultzCompany@aol.com

11