8UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW HAVEN SAVINGS BANK,<br><br>               Plaintiff<br>v.<br><br>ALTHEA FOLLINS, HAROLD FOLLINS,<br>AETNA FINANCE COMPANY D/B/A<br>ITT FINANCIAL SERVICES,<br>SECOND FEDERAL FUNDING,<br>UNITED STATES OF AMERICA, AND<br>BAY STATE GAS<br><br>               Defendants | Case No. 03-12634 – RCL |

REPLY MEMORANDUM OF ALTHEA AND HAROLD FOLLINS
IN RESPONSE TO PACIFIC SECURITY LLC'S OPPOSITION TO
CROSS-MOTION FOR SUMMARY JUDGMENT

I.    <u>The July 29, 2002 Purchase Agreement, Standing Alone, Is Not Sufficient to Establish Pacific Security's Status as the Owner of the Follinses' Note and Mortgage</u>.

1. Even if the Court permitted PACIFIC SECURITY to file the SUPPLEMENTAL AFFIDAVIT and NEW DOCUMENTS, its doing so would still not sustain its summary judgment burden to establish that it is the "owner"[1] of the NOTE and MORTGAGE.

2. This is because the SUPPLEMENTAL AFFIDAVIT fails to meet the remaining grounds of the FOLLINSES' Opposition and Cross-Motion for Summary Judgment, <u>to-wit</u>:

---

[1] ¶3 of PACIFIC SECURITY'S Cross-claim for Declaratory Judgment states:

> Pacific Security, as successor in interest to Aetna Finance Company d/b/a/ ITT Financial Services is the *holder* of a mortgage . . . given by the Defendants, Harold Follins and Althea Follins . . .

PACIFIC SECURITY, however, cannot be a "holder" because it is undisputed that the NOTE is a non-negotiable instrument.  See ¶3 <u>infra</u>.

1

the failure of PACIFIC SECURITY to produce (i) the pre-July 29, 2002 sale documents to establish its "prior chain of title" — commencing with the first transfer of the NOTE and MORTGAGE in 1995 from Aetna/ITT to Transamerica Financial Services[2] — and (ii) the post-July 29, 2002 transfer documents to Wilshire Credit Corporation.

3.  It is well-settled commercial law that a transferee of a non-negotiable promissory note – not being a "holder" thereof under the Uniform Commercial Code — "must prove the rights of his transferor and, of course, any prior transferors. A transferee cannot be a holder unless the instrument is negotiable." e.g., Southwestern Resolution Corporation v. Watson,[3] 33 UCC Rep.Serv.2d 1144, 964 S.W.2d 262, 41 Tex. Sup. Ct. J 80 (Supreme Court of Texas, 1997); Jernigan v. Bank One, Texas, N.A., 803 S.W.2d 774 (Tex.App. 1991);[4] NE England Associates, Inc. v. Davis, 333 So.2d 696 (La. App. 1976);[5]

---

[2] See ¶25.B(2) and ¶25.B(3) of the FOLLINSES' Statement of Material Facts in Support of Cross-Motion for Summary Judgment and pp. 2-6 of Memorandum of Law.

[3] With respect to the "prior transferors" of the note there in issue, the Court stated:

> Southwestern claims to be a holder of the First Texas note, and it did not prove what rights the FDIC, Intervest, or Dosohs had.

[4] The Court stated:

> Promissory notes can be transferred lawfully without a written assignment or an indorsement by the legal owner or holder. [citations omitted] Absent an indorsement, however, possession must be accounted for by proving the transaction through which the note was acquired. Appellee has presented no proof of any transfer that would vest in it ownership rights sufficient to enforce payment of the note.

[5] The Court stated:

> [M]ere possession of the un-endorsed instrument is not prima facie evidence of ownership. Thus, if the face of the instrument indicates title is in any person other than the possessor, the burden is upon the possessor to prove his ownership. He must prove a valid transfer or lose his right to sue on the instrument.

4. This rule has been addressed and followed within the context of summary judgment proceedings brought by holders or owners of notes who are seeking to recover the alleged balances thereunder. e.g., Liles v. Myers,[6] 38 NC App. 525, 248 S.E.2d 385 (1978); Shepard v. Boone, 99 S.W.3d 263 (Tex.App. 2003).[7]

5. The reason for this rule is patently obvious, especially where — as here — the party claiming to be the "holder" or "owner" is the last of several prior transferees, all of whom allegedly took by assignment. As the Supreme Judicial Court succinctly stated in Mathew Cummings Co. v. Grande, 281 Mass. 546, 184 N.E. 365 (1933):

> The claimant got only what Grande had on the day he assigned. If before that he had released or disposed of possible claims, the assignee did not take them.

6. These same principles have been followed in Massachusetts. Presenting facts similar to those at bar — and also in the context of cross-motions for summary judgment — the Court in Kaitz v. Pergola, 1997 Mass.App.Div. 29 made clear the need for the party

---

[6] The Court stated:

> As evidence that a plaintiff is holder of a note is an essential element of a cause of action upon such note, the defendant was entitled to demand strict proof of this element. . . . As the record on appeal fails to reveal [that] . . . . any other competent evidence was introduced to show that the plaintiff was the holder of the note, she has failed to prove each essential element of her claim sufficiently to establish her entitlement to summary judgment.

[7] The Court stated:

> Appellees argue that they established that they were entitled to summary judgment on the issues . . . . Promissory notes can be transferred lawfully without a written assignment or an indorsement by the legal owner or holder. [citations omitted] Absent an indorsement, however, possession must be accounted for by proving the transaction through which the note was acquired. [citations omitted] . . . Here, appellants failed in their written response to appellees' motion for summary judgment to allege or present sufficient summary judgment proof that MultiMortgage BanCorp was the owner and holder of the note signed by appellees.

seeking to enforce a note to first establish that it is the lawful and valid holder thereof. Granting summary judgment for the makers of the note, the Court stated:

> It is conceded that BayBank was the holder of the note when this action was filed in September, 1993. "It is elementary that an action at law may not be maintained if, *at the time of its commencement*, the plaintiff does not have a right or action, or a complete cause thereof [emphasis supplied][citations omitted]. At the time the Trustees commenced this action, they were neither holders, nor even transferees, of the Note and had no right to maintain a suit upon it. Accordingly, summary judgment for the defendants is affirmed.

7. Given the foregoing, on the existing summary judgment record, PACIFIC SECURITY has not met its required burden of proof. Indeed, the Court will recall the reply of its counsel at the June 7, 2005 Status Conference when asked by the Court whether he thought there were "disputes of fact" concerning the "chain of title." He responded that "while there might be disputes of fact, they could not be proven."

8. That has been the FOLLINSES' position throughout this litigation. PACIFIC SECURITY holds the burden of proof to establish its standing as the owner of the NOTE and MORTGAGE. As such, it must introduce as admissible evidence <u>all</u> of the purchase documentation that would establish an unbroken and continuous chain of title transfers of the specific NOTE and MORTGAGE. Its inability or failure to do so is fatal to its claim.

9. To the same end, PACIFIC SECURITY'S late attempt to validate its position by procuring the February 2, 2005 Power of Attorney from C&E (the 2005 POWER herein) is similarly ineffectual. <u>First</u>, it is clear that C&E no longer had any interest in the NOTE and MORTGAGE in February of 2005[8] because C&E had already transferred the

---

[8] The plaintiffs in <u>Kaitz, supra,</u> failed in attempting the same "fix." The Court stated:

> The motions under review are for summary judgment and not for failure to prosecute . . . under Mass.R.Civ.P. 17. Moreover, . . . BayBank no longer has any interest in the Note.

4

NOTE and MORTGAGE to Transamerica Financial Services in March of 1995.[9]

10. <u>Second</u>, the Appellate Division rejected such an attempt in <u>Brito v. Liberty Mutual Ins. Co.</u>, 1996 Mass.App.Div. 63, holding:

> [I]n the absence of an amendment of a complaint, events occurring after the filing of suit neither validate a premature action, nor afford a plaintiff a right to recover damages related to such events.

11. To the same end was the holding of <u>Judkins v. Tuller</u>, 277 Mass. 247 (1931) where the Court stated:

> The ratification of the execution of the bill of sale by the directors after action was brought and after the case had been heard by the auditor does not help the plaintiff here. When he brought the action he did not own the property and had no right to possession. He then had no valid cause of action against the defendant. . . . . Whatever effect the ratification by the board of directors had on the plaintiff's title, it did not support the burden of proof resting on him to show that when action was brought he had property in the chattels or the right to the immediate possession.

12. Given all of the foregoing, the FOLLINSES — the former holders of the equity of redemption — remain — by process of elimination — the only parties who are entitled to the sale proceeds.[10]

II.    The 1995 Bankruptcy Court's Ruling Sustaining The Follinses' Objection to Transamerica's Proof Of Claim Is Res Judicata of Pacific Security's Claim.

13. There is no dispute that (i) the FOLLINSES NOTE and MORTGAGE was transferred from AETNA/ITT to Transamerica Financial Services (TFS herein) on March 31, 1995; that (ii) TFS thereafter filed a Proof of Claim therefor in the FOLLINSES'

---

[9] See Footnote 2 herein.

[10] Prior to June 16, 2005, the United States did not file any response papers to the summary judgment motions, arguably making their June 16th Statement of Tax Due untimely, although, as a practical matter, the FOLLINSES intend to resolve their tax obligations if they are successful in this action. Second Federal and Bay State both failed to attend the Status Conference. Second Federal failed to submit papers and Bay State's submissions failed to comport with Local Rule 56.1 and its claim must thus be stricken.

5

1995 Chapter 13 bankruptcy (hereinafter the CLAIM); that (iii) the FOLLINSES Objection thereto was sustained; and that (iv) TFS did not appeal therefrom.

14. There is also no dispute that (i) the Chapter 13 Plan was subsequently confirmed, and (ii) that the Chapter 13 proceeding was thereafter dismissed.[11]

15. Without any supporting authority, PACIFIC SECURITY argues that the dismissal of the Chapter 13 proceeding revived the CLAIM because the FOLLINSES never received a discharge. [Opposition, ¶A] This argument is erroneous as a matter of law.

16. This District, <u>In re Space Building Corporation,</u> 206 B.R. 269 (D.Mass. 1996)(Woodlock, J. on appeal under BR 8013) — as well as most others — hold that "dismissal does not . . . eliminate the collateral estoppel or *res judicata* effect that a bankruptcy court decision made during a bankruptcy case has in a later proceeding" where (i) the decision does not implicate one of the specific Code provisions set forth in the dismissal provisions of §349(b), (ii) the party affected by the decision failed to appeal therefrom in the bankruptcy proceeding and (iii) a Chapter 11 or 13 plan was confirmed. <u>e.g.</u>, <u>Wytch v. Pacific Reconveyance</u>, 223 B.R. 190 (9th Cir. BAP)(summary judgment granted on basis of <u>res judicata</u> affect of earlier unappealed order annulling the Automatic stay regardless of subsequent dismissal of bankruptcy case).

17. As Judge Woodlock stated in <u>Space,</u> citing with approval to <u>In re Searles</u>, 70 B.R. 266 (D.R.I. 1987) and <u>Matter of Mulberry Chesterton Inn</u>, 142 B.R. 566 S.D. Ga. 1992):

> [S]ubstantial caselaw . . . holds that, unless revoked expressly, orders made pursuant to a confirmed plan remain enforceable despite dismissal of the underlying Chapter 11 case.
> .      .      .      .      .

---

[11] See entries #41 and #50, Docket Sheet, Exhibit "B" to Affidavit of Daniel Murphy, Esq.

> Section 349(b) . . . specifies the effect of a dismissal . . . . Despite some seemingly broad statements of expansive general effect, most courts have cabined section 349(b)'s application to Bankruptcy Court orders that are specifically identified in the statute.

18. As such, in both <u>Searles</u> (Consent order in a Chapter 13 proceeding not specifically named in §349(b) was not vacated by dismissal "by negative implication") and <u>Mulberry</u> (Unless court's ruling is referenced in §349, "no controlling authority . . . holds that such revesting [of estate property] retroactively annuls . . . final rulings [a subrogation order] that have been rendered."), unappealed rulings made in the bankruptcy proceedings remained binding regardless of the subsequent dismissals of the cases. See also <u>In re Derrick</u>, 190 B.R. 346 (W.D. Wisconsin, 1995)("Although §349 enumerates numerous sections of the code which are affected by a dismissal, it does not reverse *everything*.").

19. The application of these principles to the case at bar is obvious. The FOLLINSES 1995 bankruptcy proceeding was marked by (i) a Court ruling sustaining an objection to TFS'S CLAIM that did not specify any of the sections enumerated in §349 [Docket entry #29], (ii) a failure of TFS to appeal therefrom within the 10-day period required by BR 8002, (iii) a later confirmed Chapter 13 Plan on October 31, 1996 (Docket entry # 41) and (iv) a subsequent dismissal of the case on June 4, 1997 (Docket entry #51).

20. Under these circumstances, the CLAIM remained extinguished by the 1995 bankruptcy ruling and PACIFIC SECURITY holds no enforceable right to the proceeds.

Respectfully submitted
Althea Follins and Harold Follins
By their attorneys

s/Gordon N. Schultz
BBO #447600
Schultz & Company
One Washington Mall
Boston, MA 02108

|  |  |
|---|---|
| Dated: June 21, 2005 | 617.723.9090<br>SchultzCompany@aol.com |