UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW HAVEN SAVINGS BANK,<br><br>    Plaintiff<br> v.<br><br>ALTHEA FOLLINS, HAROLD FOLLINS,<br>AETNA FINANCE COMPANY D/B/A<br>ITT FINANCIAL SERVICES,<br>SECOND FEDERAL FUNDING,<br>UNITED STATES OF AMERICA, AND<br>BAY STATE GAS<br><br>    Defendants | Case No. 03-12634 – RCL |

SUPPLEMENTAL MEMORANDUM OF ALTHEA AND HAROLD FOLLINS
IN OPPOSITION TO PACIFIC SECURITY LLC'S
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT

Introduction

As requested by the Court in its November 14, 2005 Amended Procedural Order (hereinafter the ORDER), this Supplemental Memorandum addresses the effect of the "bankruptcy court documents"[1] on the summary judgment issues raised by the parties and which are now pending before the Court on the parties' cross-motions therefor.

Preliminary Statement

Before the FOLLINSES address (1) the questions raised by the Court on page 4 of its ORDER and (2) other issues related thereto, the FOLLINES would remind the Court

---

[1] Pursuant to counsel's review of the file as suggested by the Court, these "documents," as they relate to the issues pending, consisted of (1) the FOLLINES' Objection to Proof of Claim of Transamerica Financial Services, dated December 18, 1995 (hereinafter the OBJECTION); (2) Transamerica's Proof of Claim; (3) the Confirmed Chapter 13 Plan; and (4) two Final Reports and Accounts of the Trustee of July 28, 1997 and October 1, 1997, with Final Decrees and Orders entered by the Court. with respect thereto.

1

that their position as to the effect of the 1995 bankruptcy proceedings on PACIFIC SECURITY'S claim is only one of several grounds upon which they base their superior right to the foreclosure proceeds over the competing claim of PACIFIC SECURITY.

Thus, even assuming <u>arguendo</u> that the Court should ultimately conclude — as it has queried — that the "bankruptcy court documents undercut the factual basis for the FOLLINSES' argument for dismissal," or that "the documents constitute evidence of TSF's ownership of the mortgage at that time [1995]" — with which hypotheses the FOLLINES disagree as addressed herein — that finding would neither negate nor exclude the viability of the FOLLINSES remaining arguments as to why PACIFIC SECURITY cannot prevail in this action.

Thus, (1) PACIFIC SECURITY'S inability to provide sufficient and satisfactory evidence of its <u>complete</u> prior chain of title in order to demonstrate that it is the lawful owner of the NOTE and MORTGAGE entitled to sue for the amount due, [2] (2) its failure to demonstrate that the NOTE was a properly witnessed note within the meaning of G.L.c. 260, §1, [3] and (3) the binding effect of the confirmed Chapter 13 Plan notwithstanding the later dismissal of the case (previously addressed but reiterated more directly herein in Section II) are each enough to deny PACIFIC SECURITY'S claim to the surplus funds.

---

[2] As set forth in the FOLLINSES' Statement of Material Facts, after the NOTE and MORTGAGE was transferred to Transamerica Financial Services (hereinafter TFS) by Aetna in 1995, there were a number of purported subsequent transfers prior to that upon which PACIFIC SECURITY bases its claim.

In addition, this Memorandum will ultimately conclude that, even if the "bankruptcy court documents" were viewed as "admissions" by the FOLLINES, that fact, standing alone, would still not satisfy PACIFIC SECURITY'S required burden of proof.

[3] These arguments are those set forth in Section IV, ¶¶I and II.B of the FOLLINSES' initial Memorandum of Law [May 13, 2005] and ¶I of the FOLLINSES' Reply Memorandum of Law [June 21, 2005].

I.  THE BANKRUPTCY COURT DOCUMENTS DO NOT CONSTITUTE AN ADMISSION BY THE FOLLINSES THAT EITHER TFS WAS ENTITLED TO PAYMENT OF THE NOTE OR THAT TFS OWNED THE NOTE AND MORTGAGE IN 1995.

    A.  <u>The Bankruptcy Court Documents Do Not Contain Statements that Qualify as Admissions.</u>

Before addressing the effect of the "bankruptcy court documents" in this proceeding — implicating precedent as to whether and, if so, to what extent, statements made in one litigation should be considered as admissions in a subsequent litigation — the threshold question is whether the subject statements are themselves, in fact, "admissions" as a matter of law.

The standards that inform that determination are (1) whether the statements under scrutiny in the former action are "inconsistent with" those being made in the current action, <u>e.g.</u>, <u>Fidelity & Deposit Co. of Maryland v. Hudson United Bank</u>, 653 F.2d 766 (3rd Cir. 1981); <u>Slate Printing Co. v. Metro Envelope Co.</u>, 532 F.Supp. 431 (N.D. Ill. 1982), cited with approval in <u>United States v. Raphelson</u>, 802 F.2d 588 (1st Cir. 1986) and (2) whether surrounding facts existing when the former statements were made are the same as those that exist in the current action, <u>Slate Printing Co., supra</u> at 435.

In the case at bar, scrutiny of the OBJECTION discloses that there is no "inconsistency" between the statements made by the FOLLINSES' attorney therein and the positions adopted by the FOLLINSES *sub judice;* nor is there enough identity in the factual contexts in which the statements were made that would properly and appropriately define the statements as admissions.

Addressing the standards in the context of the statements detailed by the Court on page 4 of its ORDER, the FOLLINSES submit the following:

1. All of the words of ¶1 of the OBJECTION make it clear that there was no concession by the FOLLINSES that Transamerica Financial Services (herein TFS) was the then lawful owner of the NOTE and MORTGAGE.

2. Noting that TFS had "failed to attach to its Proof of Claim form, copies of the note and mortgage," the FOLLINSES' counsel simply stated that, based upon the assignment recorded at the Registry of Deeds, TFS appeared to be the holder of the claimed paper.[4]

3. ¶8 of the OBJECTION stated that the FOLLINSES did not object to the dollar amount — $41,948.16 — then asserted to be due. Indeed, in the matter at bar, there is no issue over the dollar amount of the unpaid principal and interest based upon the undisputed fact that the FOLLINSES did not make any payments on the NOTE after May 18, 1993. Thus, there is no "inconsistency" in these statements.

4. There was a Final Report and Account that listed TFS as a creditor with an *unsecured* claim of $41,948.16. If this Court ultimately concludes that the dismissal of the Bankruptcy proceeding reinstated TFS'S secured status,[5] then, correlatively, the FOLLINSES would also be entitled to raise any defenses they might have had to the claim.

5. Finally, ¶9 of the OBJECTION states that its sole basis is the "classification of the claim as secured." While admittedly indicating a limited

---

[4] Had the Court not allowed the FOLLINSES' OBJECTION and the matter proceeded to a trial on TFS'S Proof of Claim as a contested matter, TFS would have been put to its proof as to its lawful status.

[5] See, however, the new argument set forth in Section II hereof on this issue that was prompted by a review of the bankruptcy file.

4

objection, this statement must be viewed in the context of the facts that existed at the time it was made — and thus implicates the "second standard" addressed above.

6. To that end, the FOLLINES' statement was made in a Chapter 13 bankruptcy proceeding in which there was a manifest intent and expectation to propose and confirm a Chapter 13 Plan with a 10 % dividend for unsecured creditors, payable over 60 months. Indeed, the Court's file shows that such an Amended Plan was, in fact, confirmed on October 31, 1996.

7. Moreover, the FOLLINES' OBJECTION was made only after the Court had already established a value for their residence at $117,000.00, thereby rendering TFS'S claim as unsecured under the valuation provisions of the Bankruptcy Code as a matter of law.

8. Under the Plan, the FOLLINSES' 10% obligation to TFS on its alleged unsecured claim of $41,948.16 was $69.91 per month. To have contemplated or effectuated the assertion of any other possible defenses to TFS'S claim against such a de minimus obligation would have been neither practical nor cost-efficient. Clearly, the bankruptcy environment in 1995 and the current environment are not at all the same.

9. To that end, in 1995, there were two circumstances not extant in the context of the current action that would have understandably led the FOLLINSES and their counsel to limit any objection to simply a determination of TFS'S secured status, to-wit:

   (1) the reasonable likelihood — susceptible of then-available documentary proof — that Aetna had, in fact, assigned the NOTE and

5

      MORTGAGE to TFS. This is because <u>only six (6) months</u> had elapsed between the date the assignment was claimed to have taken place (March 31, 1995) and the date the Proof of Claim was filed (September 8, 1995); and

      (2) the lack, at that time, of any Statute of Limitations defense available to the FOLLINSES. This is because it was undisputed that the FOLLINSES had made payments on the NOTE until May 18, 1993 — then only 2 years into the six-year limitations period.

10. As of the current action, the six-year period has long since expired. As such, PACIFIC SECURITY'S only alternative was to find an argument that would support a claim within the 20-year limitation provision.

Given the disparate circumstances between the 1995 bankruptcy and the current action, it would be inappropriate to consider anything set forth by the FOLLINSES in the OBJECTION to be either a "binding" or, indeed, any form of an, admission.

    B. <u>The Bankruptcy Court Documents Do Not Constitute an Admission by the FOLLINSES that TFS Was Entitled to Payment of the Note in 1995 nor that TFS Owned the NOTE and MORTGAGE in 1995.</u>

What has been addressed above demonstrates why this Court should not construe the 1995 bankruptcy court documents — filed some 10 years before the pleadings under consideration in the matter *sub judice* — as admissions by the FOLLINSES that (1) TFS necessarily owned the NOTE and MORTGAGE in 1995 and/or that (2) the FOLLINSES should now be precluded from raising any of the matters and defenses set forth in this action that might possibly contradict that position.

Assuming, however, that the Court should conclude otherwise and find that the "bankruptcy court documents" are, to any extent, "inconsistent" with any of the

6

FOLLINSES current positions, it is, at the outset, clear that the prior statements would not be "conclusive judicial admissions," thereby binding the FOLLINSES. e.g., Gonzalez, supra at 305.  As noted, however, the FOLLINSES, submit that there is no proper basis to accept the content of the OBJECTION as any form of admissions, albeit nonbinding.

The grounds for this proposition lie in the First Circuit's decision in Vincent v. Louis Marx & Co., Inc., 874 F.2d 36 (1st Cir. 1989). There, the Court, after a review of precedent in both the First and other Circuits, including its decision in United States v, Raphelson, 802 F.2d 588 (1st Cir. 1986)(later cited in Gonzalez v. Walgreens Co., 918 F.2d 303 (1st Cir. 1990)), stated:

> We are not disposed to lay down a flat rule admitting or excluding inconsistent allegations in a prior pleading.  We think that the initial decision should be left to the discretion of the trial judge under Fed.R.Evid. 403.

In the FOLLINSES' view, the application of Rule 403 principles to the disparate factual contexts in which the comparative pleadings were filed compel the conclusion that consideration of the OBJECTION would constitute not only unfair prejudice to the FOLLINSES but also a confusion of the issues.  The bases for this conclusion are those points already addressed above.

In short, knowing that TFS'S claim would be rendered unsecured based upon the prior valuation of the property made by the Court — leaving an unsecured Plan obligation of $69.91 per month  — the expenditure of legal fees in contesting TFS'S status would not have been justified. That conclusion can easily be drawn from the "non-contest" language employed by FOLLINSES' counsel in ¶¶ 1 and 8 of the OBJECTION, thereby resulting in ¶9 being the only objection raised.

More important, there was, at that time, no Statute of Limitations defense available to the FOLLINSES because only two of the six-year period had then elapsed. As such, the ¶9 statement that "unsecured status" was their "sole objection" cannot now be properly applied to challenge their current Statute of Limitations defense.

II.   THE DISMISSAL OF THE FOLLINES CHAPTER 13 PROCEEDING, AFTER CONFIRMATION OF THE CHAPTER 13 PLAN, DID NOT OPERATE TO REINSTATE THE SECURED MORTGAGE CLAIM OF TFS.

   A. <u>The Later Dismissal of a Chapter 13 Proceeding Does Not Restore a Lien Avoided prior to Confirmation of the Plan.</u>

This Bankruptcy District, <u>In re Space Building Corporation</u>, 206 B.R. 269 (D. Mass. 1996) follows the rule established in <u>Matter of Depew,</u> 115 B.R. 965 (N.D. Ind. 1989) and numerous other similar decisions, <u>e.g.</u>, <u>In re Barton Industries</u>, 159 B.R. 954 (W.D. Okla. 1993); <u>McNaughton-McKay Electric Co. of N.C. v. Andrich</u>, 324 S.C. 275, 483 N.E.2d 564 (1997), that the entry of an order dismissing a reorganization proceeding *after* confirmation of the reorganization plan does not operate to reinstate a lien avoided prior to the Plan confirmation.

As the concept of a Chapter 13 Plan ("reorganizations" for individuals) and a Chapter 11 Plan (reorganizations for businesses) are conceptually the same, and both implicate the same operative Bankruptcy Code provision §349, this rule is equally applicable in the context of the FOLLINES' Chapter 13 proceeding and thus operated to preclude reinstatement of the secured claim of TFS therein.

   B. <u>The Court Entered Orders that Did Not Effectuate Reinstatement.</u>

In Section A above, the FOLLINSES have argued that, notwithstanding the subsequent dismissal of the FOLLINES' bankruptcy proceeding, TFS'S secured claim was not reinstated. Other papers found in the Court's bankruptcy file support that conclusion on independent grounds.

8

In particular, on July 28, 1997 and October 1, 1997, the Bankruptcy Judge entered so-called "Final Decrees and Orders" that stated:

> The above Final Report and Account and Motion for Final Decree having come before the Court is hereby allowed.

The Trustee's Final Reports explicitly classified TFS'S claim as "unsecured." They were attached to a "Motion for Final Decree" that was filed and served by the Trustee on all of the parties, including TFS which had appeared in the proceeding. As such, the Court's Final Decrees and Orders approved the Trustee's classification of TFS'S claim as unsecured on two separate occasions.[6]

Apart from the operative effect of the Depew rule for reorganization plans dismissed after confirmation, §349(b) of the Bankruptcy Code addresses the issue of potential lien reinstatement under certain conditions but with the caveat "unless the Court, for cause, orders otherwise." The FOLLINES submit that the Court's two Final Decrees and Orders — approving the Trustee's Final Report and Account classifying TFS'S claim as *unsecured* — were orders that precluded reinstatement of the mortgage lien.

      C. TFS is Bound by the Final Decrees and Orders under the Principles of Res Judicata, Laches or Estoppel.

It is undisputed that TFS appeared in the FOLLINES' bankruptcy proceeding, was served with the Trustee's two "Motions for Final Decree," and failed to lodge any objections thereto, including an objection to the Trustee's classification of TFS'S claim as *unsecured*.

---

[6] It is not clear from the bankruptcy file why there were two Motions and Final Reports and Accounts that were filed and approved nearly 3 months apart.

9

TFS also did not, after receiving notice of the proposed case dismissal and the Trustee's Final Report and Account, seek to effectuate any claimed rights under §349(b) by moving the Court for an order that would (i) void the Court's earlier order sustaining the FOLLINES' OBJECTION and (ii) reinstate its claimed mortgage lien. TFS also never appealed from any of the Final Decrees. It is therefore bound thereby.

Moreover, even if there were any uncertainty in the circumstances surrounding the Final Decrees, over eight (8) years has passed since the entry of the Court's first Decree and Order. Indeed, the case has been closed for some time and Judge Kenner — who entered the Orders — retired from the bench several years ago. As such, the one-year, or any other "reasonable period," that might have been available to TFS under any provision of Fed.R.Civ.P. 60(b) to address those circumstances has long since passed. That circumstance, taken together with the 10-year lack of enforcement of the claimed mortgage lien by any of the several parties who allegedly held the NOTE and MORTGAGE prior to PACIFIC SECURITY compels the conclusion that the Orders should not now be disturbed and the claim remain as unsecured.[7]

                    Respectfully submitted

                    Althea Follins and Harold Follins
                    By their attorneys

                    s/Gordon N. Schultz

                    BBO #447600
                    Schultz & Company
                    One Washington Mall
                    Boston, MA 02108
                    617.723.9090
                    SchultzCompany@aol.com

Dated: November 30, 2005

---

[7] As the FOLLINES have previously argued, even PACIFIC SECURITY took no steps to pursue foreclosure of the mortgage or assert its claimed lien until it was sought out by the first mortgagee New Haven Savings Bank in connection with the impleader action.