# United States District Court
# District of Massachusetts

NEW HAVEN SAVINGS BANK,
      Plaintiff,

      v.                    CIVIL ACTION NO. 2003-12634-RBC[1]

ALTHEA FOLLINS,
HAROLD FOLLINS,
AETNA FINANCE COMPANY d/b/a
      ITT FINANCIAL SERVICES,
SECOND FEDERAL FUNDING,
UNITED STATES OF
      AMERICA,
BAY STATE GAS,
      Defendants.

## MEMORANDUM AND ORDER ON PACIFIC SECURITY, LLC'S MOTION FOR SUMMARY JUDGMENT (#37) AND MEMORANDUM ON CROSS-MOTION FOR SUMMARY JUDGMENT OF ALTHEA AND HAROLD FOLLINS (#42)

---

[1]
      With the parties' consent on October 13, 2004, this case was referred and reassigned to the undersigned for all proceedings including trial and the entry of judgment to 28 U.S.C. §636(c).

COLLINGS, U.S.M.J.

## I. Introduction

On November 5, 2003, the plaintiff, New Haven Savings Bank ("the Bank"), filed a complaint in interpleader in the Massachusetts Superior Court. The action arose from a foreclosure of a first mortgage on property located at 5 Lori Lane in Randolph, Massachusetts, owned by the defendants Harold and Althea Follins (jointly, "the Follinses"). The debt the Follinses owed the Bank was satisfied, and the foreclosure sale resulted in a surplus of $106,897.69, which was paid into the Court.

The Bank's interpleader complaint seeks to have parties with a potential interest in the proceeds prove such claims.[2] The Bank named several parties with potential claims: the Follinses, Aetna Finance Company d/b/a ITT Financial Services through its successor in interest, Pacific Security, LLC ("Pacific"), Second Federal Funding Corporation, the United States, and Bay State Gas. The United States removed the case to the federal district court under 28 U.S.C. §§1442 and 1444 on December 31, 2003.

---

[2]

On October 4, 2004, the district judge to whom this case was then assigned allowed the Bank's motion (#20) to deposit the surplus funds into the registry of the Court and to withdraw from the case. (#24)

In January and February, 2004, defendants United States, Second Federal and Bay State filed answers to the complaint. (##3, 8, 9)  On April 5, 2004, the Follinses filed an answer as well as a counterclaim against the Bank. (#12)  More than two months later on June 21, 2004, Pacific Security, LLC ("Pacific") as successor in interest to Aetna/ITT filed an answer and cross-claim for declaratory judgment against all other defendants. (#15)  Pacific alleged that, as the rightful and valid owner of a second mortgage on the property, it is entitled to a lien upon the surplus proceeds and possesses rights superior to all other claimants. (#15)  The Follinses filed an answer to the cross-claim on June 25, 2004. (#18)

At the end of April, 2005, Pacific filed a motion for summary judgment on its cross-claim (#37) along with a memorandum in support (including a statement of material facts) (#38), and an affidavit with exhibits (#39).  In response, the Follinses submitted an opposition to Pacific's summary judgment motion (#40), an opposition to Pacific's statement of material facts (#41), and a cross-motion for summary judgment on their counterclaims (#42). In support of their cross-motion, the Follinses submitted affidavits (##43, 46), a statement of material facts (#44), a motion to strike portions of the affidavit and exhibits filed by Pacific (#45), and a memorandum of law (#47).  On May 31, 2005,

Bay State filed an opposition as well as a supporting affidavit to the Follinses' cross-motion for summary judgment. (##48, 49)  The same day Pacific, too, filed an opposition to the Follinses' cross-motion for summary judgment (#51), an opposition to the statement of facts (#53), and an affidavit with exhibits (#52).  Pacific also submitted an opposition to the motion to strike (#50) and a supplemental affidavit in support of its summary judgment motion (#54)[3]. On June 21, 2005, the Follinses filed a reply brief on their cross-motion for summary judgment. (#57)

Oral argument on the dispositive motions was heard on July 11, 2005. After hearing, summary judgment between the Follinses, Bay State and the United States was denied because genuine issues of material fact exist.  The question of summary judgment as between the Follinses and Pacific was taken under advisement.  In response to an amended procedural order (#62) issued by the Court on November 14, 2005, the Follinses and Pacific have each filed a supplemental memorandum (##63, 64).  At this juncture, the motions vis-a-vis the Follinses and Pacific are ripe for decision.

---

[3] The Follinses moved to strike (#55) Pacific's supplemental affidavit on June 13, 2005, and Pacific filed an opposition (#58) to that motion on June 21, 2005.

## II. The Facts

The Follinses, husband and wife, are residents of Massachusetts and the former owners of the property in Randolph, Massachusetts, as well as the holders, or former holders, of the equity of redemption in the property. (#44 ¶¶1, 2, 7[4])  The Follinses entered into a loan agreement with Aetna/ITT and executed a promissory note (the "Note") on September 22, 1987 in the original amount of $43,280.71, which was secured by a second mortgage (the "Mortgage") on the property the same day. (#44 ¶¶11, 12)  The Follinses' signatures on the Note were witnessed by Leslie Saunders and Diane Duarte, two employees of Aetna/ITT in the Rhode Island office where the Note was signed. (#44 ¶13)  The Follinses made payments on the Note until May 18, 1993, at which point they defaulted by failing to make further payments.  (#44 ¶14)

Pursuant to a March 31, 1995 Asset and Purchase Agreement and Bill of Sale (collectively "1995 Purchase Agreement"), Aetna/ITT allegedly sold the

---

[4]
    Reference is made to the Follinses' statement of undisputed facts, not the supporting documents. Unless otherwise noted, these facts are admitted by Pacific in its opposition to the Follinses' statement of undisputed facts. *See* #53.  One such dispute is that the Follinses claim to be the *current* holders of the equity of redemption while Pacific asserts that they are the *former* holders of the equity of redemption.

Note and Mortgage to Transamerica Financial Services ("TFS").  (#44 ¶15)[5]

Shortly thereafter, on June 13, 1995, the Follinses filed for Chapter 13

bankruptcy in Bankruptcy Court for the District of Massachusetts. (#52 ¶3)  On

September 18, 1995, TFS filed a Proof of Claim ("TFS Proof of Claim") in the

bankruptcy proceeding in the amount of $41,948.16, which TFS contended was

the outstanding balance on the Note that the Follinses owed TFS. (#44 ¶17;

#46, Exh. 2)  On December 18, 1995, the Follinses filed an objection to the TFS

Proof, which objection was sustained by the Bankruptcy Court on February 26,

1996. (#44 ¶18)  TFS did not appeal the decision regarding the objection. (#44

¶19)

Ultimately, on June 2, 1997, nearly two years after the initial bankruptcy

filing, the Bankruptcy Court entered an order granting the Chapter 13 trustee's

motion to dismiss the bankruptcy proceedings. (#52 ¶4 and Exh. B)  The case

was closed without a discharge of the Follinses' debts on June 17, 1997.  (#52

¶4 and Exh. B[6])  The Follinses again filed a petition for Chapter 13 bankruptcy

---

[5]

Proof of the existence and validity of this 1995 Purchase Agreement was not produced during the course of discovery.  (#44 ¶15, footnote 1)

[6]

In his affidavit Pacific's attorney states that the case was closed on June 17, 1997, but the docket (#52, Exh. B) indicates that the case was terminated on June 27, 1997.  The discrepancy in the dates is not material.

on March 8, 1999, which was likewise dismissed on September 25, 2000 and closed on October 17, 2000 without any discharge of the Follinses' debt. (#52 ¶¶6,7 and Exh. A)

Pursuant to a July 29, 2002 Purchase Agreement and Bill of Sale ("2002 Purchase Agreement"), Transamerica Home Loan allegedly sold a portfolio of approximately 63,0000 unspecified "loans" to Pacific under a power of attorney granted by TFS.  (#44 ¶24B; #54, Exh. A)  A redacted exhibit included with the Bill of Sale purports to list those loans sold/purchased as part of the portfolio. (#54, Exh. B)  This exhibit apparently lists the Follinses' loan as being included in the portfolio, although a complete list of all loans included in the transfer is not set forth. (#54 ¶10 and Exh. B)   After closing the sale/purchase of the portfolio, TFS physically transferred the individual loan files to Pacific, including the Follinses' loan file.  (#54 ¶11)

On May 13, 2004, Computer and Leasing Corporation ("C&E") - claimed successor in interest by merger to Aetna/ITT - appears to have assigned "all rights, title, and interest" in the Follinses' Note and Mortgage to TFS. (#38 ¶3; #39, Exh. C)  Later the same day, TFS in turn assigned "all rights, title, and

interest" in the Note and Mortgage to Pacific.  (#38 ¶4; #39, Exh. D[7])  The authority to execute these back-to-back May 2004 assignments ("2004 Assignments") purportedly arose from two documents: (1) A December 16, 2002 power of attorney substitution, and (2) the 2002 Purchase Agreement. (#44 ¶24)

In correspondence between the parties' attorneys dated January 24, 2005, the Follinses requested a copy of the 2002 Purchase Agreement. (#46 ¶11 and Exh. 6)  Pacific, apparently out of concern regarding the confidentiality of releasing the 2002 Purchase Agreement, refused to produce this documentation at that time.  (#46 ¶12 and Exh. 7)  Redacted copies of the 2002 Purchase Agreement, the Bill of Sale and the list of loans showing the inclusion of the Follinses' loan within the transferred portfolio were ultimately filed as exhibits to the supplementary affidavit of Christopher Foreman (#54) on May 31, 2005.

Numerous powers of attorney and power of attorney substitutions purport to authorize Pacific to demand, reduce to possession, sue upon, collect and receive funds for loans and retail installment contracts in its portfolio.  (#38 ¶5;

---

[7]

The Follinses admit that Exhibits C and D to the Foreman Affidavit (#39) purport to be what Pacific says they are, but deny that the assignments were effective or that they serve to transfer to Pacific a valid, enforceable claim in this case. (#41 ¶¶3, 4)

#39, Exh. E[8])  On February 2, 2005, more than a year after the filing of the interpleader action and approximately nine months after the back-to-back May 13, 2004 assignments from Aetna/ITT to TFS and TFS to Pacific, C&E - the original payee of the Note - granted a power of attorney to Pacific, specifically authorizing Pacific to demand, reduce to possession, sue upon, collect, and receive funds under the Follinses' Note and Mortgage. (#38 ¶6; #39, Exh. F[9])

### III. *Summary Judgment Standard*

Summary judgment purports "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.,* 332 F.3d 6, 12 (1 Cir., 2003) (citing *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1 Cir., 1990) (quoting Fed. R. Civ. P. 56 Advisory Committee's note)).  The party moving for summary judgment

---

[8]

The Follinses admit that the instruments incorporated in Exhibit E to the Foreman Affidavit (#39) purport to be what Pacific says they are, but deny that they entitle Pacific to collect upon sums due under the Note and Mortgage or that Pacific has established a valid, enforceable claim to the Note and Mortgage. (#41 ¶5A) The Follinses also contend that the instruments incorporated in Exhibit E are not properly before the Court. (#41 ¶5B)

[9]

The Follinses admit that the instruments incorporated in Exhibit F to the Foreman Affidavit (#39) purport to be what Pacific says they are, but deny that they entitle Pacific to collect upon sums due under the Note and Mortgage or that Pacific has established a valid, enforceable claim to the Note and Mortgage. (#41 ¶5A) The Follinses also contend that the instruments incorporated in Exhibit F are not properly before the Court. (#41 ¶5B)

bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1 Cir., 2003). After the moving party has met its burden, "the burden shifts to the summary judgment target [the non-moving party] to demonstrate that a trial-worthy issue exists." *Mulvihill,* 335 F.3d at 19 (citing *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1 Cir., 2000)).

When considering whether to grant summary judgment, the Court must determine whether:

> ...the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

In making this assessment, the Court must "scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor." *Mulvihill,* 335 F.3d at 19 (citing *Morris v. Gov't Dev't. Bank,* 27 F.3d 746, 748 (1 Cir., 1994)); *see also Podiatrist Ass'n, Inc.,* 332 F.3d at 13; *Pure Distributors, Inc. v. Baker,* 285 F.3d 150, 152 (1 Cir., 2002); *New England Regional Council of Carpenters v. Kinton,* 284 F.3d 9, 19 (1 Cir.,

2002) (citing *Dynamic Image Technologies, Inc. v. United States,* 221 F.3d 34, 39

(1 Cir., 2000)); *Kearney v. Town of Wareham,* 316 F.3d 18, 22 (1 Cir., 2002).

Despite this "notoriously liberal" standard, *Mulvihill,* 335 F.3d at 19,

summary judgment cannot be construed as "a hollow threat." *Kearney,* 316

F.3d at 22. A factual dispute which is neither "genuine" nor "material" will not

survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248 (1986). Thus, in deciding whether a factual dispute is "genuine,"

the Court must determine whether the evidence is such that a reasonable jury

could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248;

*Kearney,* 316 F.3d at 22 (citing *United States v. One Parcel of Real Prop. (Great*

*Harbor Neck, New Shoreham, R.I.),* 960 F.2d 200, 204 (1 Cir., 1992); *Suarez,*

229 F.3d at 53 (citing *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1

Cir., 1995)). In circumstances where submitting the issue in dispute to the jury

amounts to "nothing more than an invitation to speculate," summary judgment

is appropriate. *Feliciano de la Cruz v. El Conquistador Resort and Country Club,*

218 F.3d 1, 9 (1 Cir., 2000) (quoting *Lattimore v. Polaroid Corp.,* 99 F.3d 456,

467-68 (1 Cir., 1996)). In weighing whether a factual dispute is "material," the

Court must examine the substantive law of the case, because "only disputes over

the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248; *Kearney,* 316 F.3d at 22.

The focus at the summary judgment phase "'should be on the ultimate issue: whether, viewing the aggregate package of proof offered by the plaintiff and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact..'." *Rivas Rosado v. Radio Shack, Inc.,* 312 F.3d 532, 535 (1 Cir., 2002) (quoting *Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430-31 (1 Cir., 2000)); *see also Leahy v. Raytheon Co.,* 315 F.3d 11, 16-17 (1 Cir., 2002); *Suarez,* 229 F.3d at 53. The party objecting to summary judgment may not merely rest upon the statements put forth in its own pleadings. *See Gillen v. Fallon Ambulance Service, Inc.,* 283 F.3d 11, 26 (1 Cir., 2002) (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4-5 (1 Cir., 1994) (a party objecting to summary judgment fails to put forth a genuine issue of material fact merely by filing an affidavit contradicting unambiguous answers contained in a prior deposition)). Instead, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the

burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### IV.  Discussion

### A.  Motion to Strike

The Follinses maintain that Pacific's supplemental affidavit in support of its motion for summary judgment (which included a copy of the 2002 Purchase Agreement and Bill of Sale) should not be considered because it was neither timely filed nor approved to be filed late by the Court. (#55 ¶2)  The Follinses point to Fed. R. Civ. P. 6(d), arguing that an affidavit used to support a Rule 56 summary judgment motion must be served with the motion. (#55 ¶3)  The Follinses also rely on *Dudo v. Schaffer,* 91 F.R.D. 128 (E.D. Pa., 1981) in support of their argument that this Court should not consider Pacific's supplemental affidavit in determining whether there is a genuine issue of material fact for trial. (#55)

The issue in *Dudo* was whether any consideration should be given to the plaintiff's supplemental affidavit, which conflicted with the plaintiff's testimony at deposition. *Dudo,* 91 F.R.D. at 131.  The Court ultimately refused to consider the plaintiff's supplemental affidavit. *Dudo,* 91 F.R.D. at 131.  In arriving at that conclusion, the District Court reasoned that the affidavit was not filed at the

13

same time as the brief in opposition to the defendant's motion for summary judgment; rather, the plaintiff filed it some time after the hearing on the motion. Moreover, the Court noted that the plaintiff had access to the information in the affidavit at the time he filed his opposition brief; if the affidavit had contained newly discovered information, the Court stated that it would have been more inclined to consider it. *Dudo*, 91 F.R.D. at 132-133.

Importantly, the *Dudo* Court did note that it is within a Court's "sound discretion" to determine whether to exclude from consideration an affidavit that contradicts earlier deposition testimony, taking into account "all of the facts and circumstances" under which the affidavit is offered. *Dudo*, 91 F.R.D. at 132. The Court also opined that it would arguably be "proper to submit a supplemental affidavit for newly discovered matter." *Dudo*, 91 F.R.D. at 133.

Unlike *Dudo*, Pacific's supplemental affidavit was filed more than one month before the hearing on the summary judgment motions. According to the docket, Pacific filed the supplemental affidavit on May 31, 2005, and the hearing was held on July 11, 2005. Therefore, the filing of the affidavit did not preclude the Follinses from an opportunity to rebut it. *See Cia. Petrolera Caribe, Inc. v. ARCO Caribe, Inc.*, 754 F.2d 404, 409 (1 Cir., 1985)("there is a substantial difference between accepting matters at the hearing which show

that an issue of fact exists, and taking evidence in support of the motion at the last minute when there is no opportunity to rebut.").

While the 2002 Purchase Agreement and accompanying documents were not newly discovered information, but were known to Pacific at the time they filed their summary judgment motion,[10] the Follinses raised new theories and defenses in their cross-motion for summary judgment which necessitated the filing of the supplemental affidavit. Because a court's decision whether to consider a supplemental affidavit is fact specific, it is proper to consider the fact that the parties have continued to raise new theories and defenses. *Cf*. *Dudo*, 91 F.R.D. at 132. Accordingly, Pacific's supplemental affidavit may properly be considered, and the motion to strike was denied by electronic order on March 29, 2006.[11]

---

[10]

Pacific initially stated that it could not produce the purchase agreements because of contractual confidentiality provisions, "as well as other concerns, such as providing information which may violated [sic] the Fair Debt Collection Practices Act." (Opposition of Althea and Harold Follins to Statement of Material Facts of Pacific LLC, #41, Exh. 7) Pacific has not indicated what change in circumstances permitted it to produce the purchase agreement now, or why Pacific did not just submit the redacted agreement initially. The Follinses maintain that Pacific never sought a protective order, and its attempt to produce the document now is "too little, too late." (#55, ¶28)

[11]

The Follinses also raised substantive grounds in support of their motion to strike the supplemental affidavit, none of which is meritorious. For example, the doctrine of judicial estoppel is simply inapplicable to the facts at hand. Similarly, that the Follinses contend that the new documents introduced in the supplemental affidavit, to wit, the 2002 Purchase Agreement and the redacted list of loans referencing the Follinses' loan, are "legally insufficient" to establish Pacific's claim (#55 ¶24) is not a basis upon which to strike the documents.

B.  Statute of Limitations

One of the central issues in the present case is whether the action is governed by the twenty-year statute of limitations under Mass. Gen L. c. 260 §1[12] or the six-year statute of limitations set forth in Mass. Gen. L. c. 260 §2.[13] The Follinses argue that because Pacific has failed to establish that it is the purchaser of the Follinses' Note and Mortgage, Pacific is precluded from bringing the action under the twenty-year limitation.  *See Rockwood v. Brown*, 67 Mass. 261, 263 (1854)(holding that a purchaser of a note from the original payee can bring an action in the name of the original payee within twenty years after the cause of action accrues).  Since Pacific's claim was not brought within the six- year limitation, the Follinses contend that it is time-barred and that judgment should enter in their favor.

Conversely, Pacific maintains that its claim has been timely brought under the twenty-year statute of limitation.  Pointing to the various powers of attorney and the two assignments, Pacific claims that it is entitled to bring the claim in

---

[12]

Mass. Gen. L. c. 260 §1  provides that "actions upon promissory notes signed in the presence of an attesting witness, if brought by the original payee or by his executor or administrator shall be commenced...only within twenty years next after the cause of action accrues."

[13]

Mass. Gen. L. c. 260 §2  provides that "actions of contract...shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."

16

the name of the original payee.  Specifically, Pacific argues that the twenty-year

limitation applies because it has the powers of attorney and the assignments,

and it is unnecessary for Pacific to demonstrate that it is the purchaser of the

Follinses' Note.

In analyzing the applicability of the twenty-year statute of limitations, it

must be determined whether the Follinses' Note was properly attested to under

Mass. Gen. L. c. 260 §1, whether Pacific's action has been brought by the

original payee or with that payee's permission, and, lastly, whether Pacific has

sufficiently demonstrated that it is the current owner of the Note and Mortgage

through the proffered documentation.  *See* Mass. Gen. L. c. 260 §1; *see also*

*Rockwood*, 67 Mass. at 263.

### 1.  The Signatures of the Attesting Witnesses

In determining whether the twenty-year statute of limitations applies, it

must first be considered whether the Note was properly signed by attesting

witnesses.  An attestation of a promissory note is valid if the "witness puts his

name to it openly, and under circumstances which reasonably indicate, that his

signature is with the knowledge of the promisor, and is part of the same

transaction with the making of the note."  *West Roxbury Cooperative Bank v.*

*Bowser*, 324 Mass. 489, 490, 87 N.E.2d 113, 114 (1949).   Whether the

17

requirements of a properly attested promissory note are met is usually a question of fact for the jury to determine on all the evidence. *West Roxbury Cooperative Bank*, 324 Mass. at 490, 87 N.E.2d at 114.

Relying on the case of *Christopoulos v. Hemenway*, 3 Mass. App. Div. 32 (1951), the Follinses argue that the Note was improperly witnessed because the Aetna/ITT employees were not third-party witnesses. (#47 ¶¶25-28)   In *Christopoulos*, the plaintiff payee, who was also the attesting witness on the promissory note, attempted to bring a claim on the note under the twenty-year statute of limitation.  *Christopoulos*, 3 Mass. App. Div. at 33.  The Court concluded that the action on the promissory note was instead governed by the six-year statute of limitation because the note had not been properly attested to by a third-party as required under the twenty-year statute of limitation. *Christopoulos*, 3 Mass. App. Div. at 33.  The plaintiff's claim was then found to be time-barred since it was not brought within six years of accrual. *Christopoulos*, 3 Mass. App. Div. at 33.

While the attesting witnesses here were corporate employees, they witnessed the signing of the Note in their individual capacity and were not acting as the payee corporate entity.  An examination of the Note itself supports this conclusion since the employees' signatures did not include their title, or in

18

any way reflect that they were witnessing the Note in their representative capacity as Aetna employees. There is no indication that the witnesses had any personal interest in the Note whatsoever. In short, the signatures are readily distinguishable from the one at issue in *Christopoulos*. Pacific should not be precluded from bringing its claim under the twenty-year statute of limitations simply because the Aetna employees served as the attesting witnesses.

## 2. *Pacific's Status as "Holder" or "Purchaser" of the Note*

The case law interpreting Mass. Gen. Laws c. 260 §1 provides that a holder of a witnessed promissory note may maintain an action on the note in the name of the payee or in the name of the payee's administrator within twenty years of accrual of the action, so long as the action is brought with the consent of the original payee or administrator. *Sigourney v. Severy*, 4 Cush. 176, 177-178 (1849). Similarly, a purchaser of a witnessed promissory note may bring an action in the name of the payee for the sole benefit of the purchaser, after the expiration of the six years from the time when the cause of action accrues. *Rockwood*, 67 Mass. at 263. Therefore, the twenty-year statute of limitation will apply if Pacific can establish either holder or owner status of the note, and that it is bringing the action with the permission of the original payee on the note.

19

a. The Powers of Attorney

Before determining whether Pacific is a holder or purchaser of the Note, the Court will first address Pacific's argument with respect to the powers of attorney.  Pacific maintains that its status as either holder or purchaser of the Note is irrelevant, as the various powers of attorney it received demonstrate that it is authorized to bring its claim in the name of the original payee, here, C & E as successor-in-interest to Aetna/ITT. (*See* #50 ¶5)  Pacific points to the January 30, 1998 power of attorney from Aetna/ITT/C & E to TFS permitting TFS to, among other things, demand or sue upon mortgage loans and charged off loans included in the 1995 Purchase Agreement. (#39, Exh. E)  Pacific also relies on a March 24, 1998 power of attorney identical to the January 30, 1998 power of attorney; a January 24, 2000 power of attorney from TFS to Transamerica Home Loan granting expansive powers of attorney; and an October 1, 2002 power of attorney from Transamerica Home Loan to Pacific, granting Pacific the ability to, among other things, sue upon loans received in the July 29, 2002 Purchase Agreement.

While an action may be brought by a subsequent holder only with the consent of the original payee, it is axiomatic that the person bringing suit in the name of the original payee must also establish his status as either holder of the

20

note or purchaser of the note. *Rockwood*, 1 Gray at 263; *Sigourney,* 4 Cush. at 177-178.    Said another way, the powers of attorney only grant Pacific permission to bring its claim, but in no way establish that the Note has been transferred to Pacific. The law requires that both be established.  A reasonable reading of the cases cited by Pacific reveals that ownership or transfer was undisputed; that is, before receiving permission to bring the suit in the name of the original payee, the claimant had undoubtedly established ownership of the note in question.[14]    Consequently, Pacific's argument that the powers of attorney standing alone are sufficient to bring its claim within the twenty-year statute of limitation under Mass. Gen. L. c. 260 §1 is not persuasive.

b. Pacific's Status as Holder of the Note

    If Pacific can establish holder status, then its claim will fall within the twenty-year limitation.  While it ultimately must be concluded that Pacific is not a holder of the Note, an analysis to quell the disputes relating to Article 3 issues shall be undertaken.[15]

---

[14]

    The implicit concern in those cases seems to be whether the maker of the note would be liable both to the original payee and the assignee or subsequent holder of the note – thus, the need for permission from the original payee on the note to avoid potential double liability.   That concern has been raised in more recent cases.  *See Morgan v. Bruce*, 1993 WL 786892 (S.D. Miss., 1993) ("maker has interest in whether person demanding payment is holder due to risk of double payment.") (citation omitted)).

[15]

    The Follinses claim that the documents proffered by Pacific fail to establish its status as the holder

A holder of a promissory note means the "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Mass. Gen. L. c. 106 §1-201(20). To qualify as a negotiable instrument, a promissory note must contain:

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising payment to do any act in addition to th payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Mass. Gen. L. c. 106 §3-104(a).

In reviewing the promissory note executed by the Follinses in favor of Aetna/ITT, there is no question that the elements of negotiability set forth in Gen. L. c. 106 §3-104(a) have been satisfied. The Note contains the Follinses'

---

of the Note, although they provide no analysis supporting this conclusion. (#41, footnote 1) They further assert that Pacific cannot be a holder because "it is undisputed that the Note is a non-negotiable instrument." (#57, footnote 1, ¶3) These are terms of art under Article 3 of the Uniform Commercial Code, as codified in Mass. Gen. L. c. 106.

promise to pay Aetna a fixed amount of money, $43,280.71; it is payable at a definite time, that is on a monthly payment schedule; and the Note does not state any other undertaking. (#39, Exh. A, B) The promise regarding the collateral to secure payment does not destroy negotiability. *See* Mass. Gen. L. c. 106 §3-104(a)(3). Therefore, it must be concluded that the Note is a negotiable instrument.

Holder status is not conferred on Pacific simply because the Follinses' Note is a negotiable instrument. Because the Note had been transferred from the original payee, Aetna/ITT, to TFS, negotiation of the instrument is necessary for Pacific to achieve holder status. *Morgan v. Bruce*, 1993 WL 786892, *13 (S.D. Miss., 1993). A proper negotiation of an instrument payable to an identified person--as is the case here--requires the holder's written endorsement on the instrument itself or on a separate paper that is firmly affixed to the promissory note. *Morgan*, 1993 WL 786892, *13; *In Re Gavin*, 319 B.R. 27, (1 Cir., B.A.P. 2004); *compare Federal Deposit Insurance Corporation v. Houde*, 90 F.3d 600, 604-5 (1 Cir., 1996). For example, in *Morgan*, the defendant executed a promissory note in favor of a third-party defendant, Hensarling. Hensarling later assigned the promissory note to the plaintiff, Morgan, as partial payment in a real estate transaction the parties had entered. *Morgan*, 1993 WL

786892, *13.  Upon transferring the note, Hensarling attached an assignment to the note which he had endorsed and notarized.  When the plaintiff later brought suit on the note, the defendant asserted that because the note had not been properly endorsed, the plaintiff was not a holder, and therefore precluded from bringing an action on the note.  *Morgan*, 1993 WL 786892, **1, 13.  The Court disagreed, concluding that the attached assignment served as an effective endorsement and that the note had been properly negotiated thereby enabling Morgan to qualify as a holder.[16]  *Morgan*, 1993 WL 786892, **1, 13.

Here, Pacific has failed to produce documentary evidence of the required chain of endorsements.  While a copy of the original Note has been provided, no copy of an endorsement of either Aetna/ITT or TFS has been offered by Pacific.  As such, Pacific cannot establish status as holder of the Follinses' Note.  While Pacific points to assignments from both Aetna and TFS, these were not "firmly affixed to the promissory note."[17]  In fact, it would have been impossible for the documents to have been so attached since the assignments were not

---

[16]

The endorsed assignment, when attached to a note, is called an "allonge" in Article 3 of the Uniform Commercial Code.

[17]

Because Pacific does not articulate with specificity what the legal significance of the assignments is, but instead baldy asserts that the assignments enable it to bring a claim (#38 at 2-5), the Court found it necessary to address the fact that the assignments do not aid Pacific in achieving holder status.

given until 2004, at least two years from the last transfer, and roughly nine years from the date of the initial transfer from Aetna/ITT to TFS.

Alternatively, Pacific could have achieved holder status by producing documentation evidencing that the Note was in bearer form when Pacific took possession of it. This would have required the Note to have been payable to bearer, or endorsed in blank by a prior holder. *Jernigan v. Bank One, Texas, N.A.,* 803 S.W.2d 774, 776 (Tex. App., 1991). Here, if Pacific had shown that Aetna had endorsed the Note in blank (by signing it), then Pacific would be a holder merely by possessing the Note. As discussed earlier, however, there is no such documentation, which in turn precludes Pacific from claiming holder status.

It is important to note that Pacific is asserting holder status in order to bring its claim under the twenty-year statute of limitations. Unlike the cases discussed above and those cited by the Follinses (*see* #57 ¶¶3-6), Pacific is not seeking holder status as a necessary step in reaching holder in due course status, an exalted position in commercial law. As a holder in due course, certain rights are invoked and the holder in due course takes ownership of a negotiable instrument free from claims or defenses that may be raised against an ordinary transferee or purchaser of a note. *See Morgan,* 1993 WL 786892, *12.

25

It is because of this advantageous position that some courts require "direct evidence" of the ownership and status as holder. *Cf. In Re Gavin*, 319 B.R. at 32 (stating that in determining whether a creditor has an enforceable obligation, "Article 3 makes it clear that a break in the chain of title is bridged not by drawing a reasonable inference."). Said differently, the possibility of an intermediate transfer could subject a maker of a promissory note to double liability – both to the apparent holder and the intermediate transferee. *See Jernigan*, 803 S.W. 2d at 777; *Morgan*, 1993 WL 786892, *12. In the absence of such a risk, some courts have been willing to conclude that holder status had been achieved on proffered documentation falling short of "direct evidence" tending to prove ownership. *NCNB Texas v. Johnson*, 11 F.3d 1260, 1265 (5 Cir., 1994). Because the risk of double liability is absent in the instant matter, the Court relies upon these cases in reaching the conclusion that Pacific has sufficiently proven it is the owner of the Follinses' Note, which will be discussed below.

Before reaching that discussion, it is important to recognize that Pacific's ability to qualify as an owner of the promissory Note is not contingent upon achieving holder status. The distinction between the two is merely that the transferee of a promissory note who does not qualify as a holder takes

26

ownership of the note subject to any claims and defenses that the maker may raise. The transferee simply acquires the rights of its transferor; the transferee is still an *owner* of the note. *Duxbury v. Roberts*, 388 Mass. 385, 388, 446 N.E.2d 401, 404 (1983); *Morgan*, 1993 WL 786892, *14. It follows then, as the cases demonstrate, that the favored position of holder in due course mandates a higher threshold of evidence for establishing holder status, whereas, a claimant asserting "owner" status does not have to satisfy as high a burden of production. Therefore, the Follinses' interchangeable use of the terms "holder" and "owner" incorrectly gives the impression that evidence of all purchase documentation must be presented to prove *either* owner or holder status. (#57, ¶5) That simply is not the case.

c. Purchaser of the Note

Based on the documentation in the record, the Court concludes that Pacific has sufficiently demonstrated that it is the owner of the Follinses' Note. Therefore, although Pacific failed to achieve holder status, Pacific's action on the Follinses' Note has been timely filed under the twenty-year limitation, as Pacific has proven that it is the owner of the Note.[18]  See *Rockwood*, 67 Mass.

---

[18]  Even if the Follinses' Note was determined to be a nonnegotiable instrument for failure to meet the requirements set forth in Mass. Gen. L. c. 106 §3-104, Pacific could still maintain an action on the Note under the twenty-year limitation since chapter 260 §1 applies to nonnegotiable instruments as well. *Pierce v.*

at 262-263. Because the documentary evidence will also determine whether Pacific is the second mortgagee and therefore the priority junior lienholder, the evidence proving ownership shall be analyzed in that context.

### 3. Proof of Pacific's Ownership of the Note

While foreclosure of a senior encumbrance or mortgage discharges junior liens, the interest of the junior lienholder is not eliminated. *Pioneer Credit Corp. v. Bloomberg*, 323 F.2d 992, 993-4 (1 Cir., 1963) (citing *Wiggin v. Heywood*, 118 Mass. 514, 516-7 (1875)). Instead, the junior lienholder retains an interest in the proceeds of the foreclosure sale and is entitled to any surplus to the extent of that interest. *Pioneer*, 323 F.2d at 994. The junior lienholder holds an equitable lien which is transferred to any surplus proceeds resulting from the foreclosure sale. *First Colonial Bank for Sav. v. Bergeron*, 38 Mass. App. Ct. 136, 646 N.E.2d 758, 759 (1995)(citing, *inter alia*, *Knowles v. Sullivan*, 182 Mass. 318, 319, 65 N.E. 389 (1902), *Dennett v. Perkins*, 214 Mass. 449, 451, 101 N.E. 994 (1913), *Pilok v. Bednarski*, 230 Mass. 56, 58, 119 N.E. 360 (1918)). The surplus proceeds are held as trust property for the benefit of any junior lienholder as the sole party in interest. *Dennett*, 214 Mass. at 451, 101 N.E.

---

*Talbot*, 213 Mass. 330, 100 N.E. 533 (1913). Therefore, qualifying as a negotiable instrument is irrelevant here.

994. Priority among the lienors is determined by the common and oft-repeated principle: "first in time, first in right." *Horizon Bank and Trust Co. v. Flaherty*, 309 F. Supp.2d 178, 199 (D. Mass.), appeal dism. by *Horizon Bank & Trust Co. v. Massachusetts*, 391 F.3d 48 (1 Cir., 2004)(citing *Middlesex Sav. Bank v. Johnson*, 777 F. Supp. 1024, 1027 (D. Mass, 1991)). [19]    Pacific asserts that it is the successor-in-interest to the original payee through the chain of assignments, and as such, it is entitled to pursue its claims in the name of the original payee. Pacific also contends that the assignments provide it with an equitable claim superior to that of the other defendants in the interpleader action. (#38 at 4-6) In contrast, the Follinses claim that a gap in the chain of title and insufficient documentation are fatal to Pacific's claim as owner of the Note. (#47 at 5, ¶11) Specifically, the Follinses argue that Pacific's failure to introduce *all* purchase documents, including the 1995 Purchase Agreement between Aetna/ITT and TFS, to establish an "unbroken and continuous chain of title" precludes Pacific from demonstrating that it is the owner of the Note.[20]

---

[19]

As earlier noted, the Follinses' 1995 bankruptcy proceedings were dismissed by the Bankruptcy Court in 1997 and the case was closed without a discharge of the Follinses' debts. This dismissal caused the lien status of the Note to be reinstated. *See* Title 11 U.S.C. §349(b)(1)(C); Pacific Security, LLC's Supplemental Memorandum #64 at 4.

[20]

Although the Follinses highlight Pacific's failure to produce the 1995 Asset Purchase Agreement and Bill of Sale when refuting the efficacy of the 2004 assignments to substantiate Pacific's ownership, in their

(#47 at 5, ¶5)  Moreover, the Follinses maintain that the 2004 Assignments are insufficient proof of ownership since the underlying purchase documentation has not been introduced. (#47 at 5, ¶5)  For the reasons discussed below, the Court finds that Pacific has introduced evidence that sufficiently proves it is the owner of the Follinses' Note.

In concluding that the evidence introduced by Pacific sufficiently proves that it is the owner of the Follinses' Note, the Court is guided by decisions from the First and Fifth Circuits that have addressed the effect of defects in chain of title to ownership of promissory notes. *NCNB Texas*, 11 F.3d 1260; *In Re Gavin*, 319 B.R. 27.

In *NCNB Texas*, one of the defendants, Anderson, signed a promissory note as guarantor of his corporation, Quest, in favor of Sam Houston Bank.

---

statement of material facts, the Follinses state:

> For purposes of this Summary Judgment Motion only - and not for trial - the <u>Footnote 20 (continued)</u>
> Follinses will assume the existence and validity of the merger and the 1995 Agreement and Bill of Sale; and that the Note and Mortgage were among the "Mortgage Loans" and "Charged Off Loans" referenced in the Power of Attorney as having been transferred to TFS under the 1995 Purchase Agreement and Bill of Sale.

#44 at p. 4.

However, this statement is internally inconsistent with a subsequent statement in the same document where the Follinses point to Pacific's inability to produce the 1995 agreement as one of "at least five deficiencies" in Pacific's claimed chain of title.  In light of these contradictory statements, the Court will not assume the existence of the 1995 agreement when evaluating Pacific's ownership claim.

When Sam Houston became insolvent, the Federal Deposit Insurance Corporation (FDIC), as receiver, transferred all of Sam Houston's assets, including notes, to NCNB Texas National Bank. *NCNB Texas*, 11 F.3d at 1262. When Quest filed for Chapter 11 bankruptcy, NCNB Texas filed suit seeking to enforce the guaranties on the note, and the Court entered summary judgment against Anderson.  Anderson appealed, claiming that NCNB Texas failed to prove ownership of the note where the purchase agreement transferring the note referred only to "certain assets," and not Quest's note specifically. *NCNB Texas*, 11 F.3d at 1265.

The Fifth Circuit did not find that defect in the chain of ownership to be fatal.  Significant in the Court's analysis was the fact that *all* of Sam Houston's assets/loans were transferred to the FDIC, and then from the FDIC to NCNB Texas.  In these circumstances, the Court reasoned that there was no question as to the ownership of the note.  The Court contrasted the facts of *NCNB Texas* with those in *FDIC v. McCrary*, 977 F.2d 192 (5 Cir., 1992), where the FDIC as receiver had transferred some assets to one bank while transferring the remaining assets to the FDIC acting in its corporate capacity.  *NCNB Texas*, 11 F.3d at 1265.  In that case, because the overlapping agreements "created a factual issue as to ownership," the Fifth Circuit reversed the district court's grant

31

of summary judgment.

In addition to the agreement transferring all of the Sam Houston loans, the Court also noted that the FDIC had produced "substantial record evidence" that it owned the Quest note. Included in the record was an affidavit of the FDIC's custodian, the original note between Quest and Sam Houston with endorsements from the FDIC receiver to NCNB Texas, and the purchase agreement from the FDIC receiver to NCNB Texas, *"which expressly covers 'all right, title and interest...in...loans and any other asset..'"* NCNB Texas, 11 F.3d at 1265 (emphasis added). Accordingly, the Court held that NCNB Texas had offered sufficient proof that it was the owner and holder of the Quest note, and summary judgment against Anderson was upheld.

Based on the record before the Court, it cannot be verified that all of Aetna/ITT's loans were transferred solely to TFS. Without the 1995 purchase agreement, it is impossible to determine whether certain Aetna/ITT assets were sold to some other entity. Nonetheless, this is not fatal to Pacific's claim as other documents provided establish ownership. The documents in the record are: the copy of the original loan, the various powers of attorney, the 2004 assignments, the 2002 purchase agreement and bill of sale, and the affidavit of Christopher Foreman, manager of the Pacific portfolio which includes the

Follinses' loan.  Taken together, as in *NCNB Texas*, this evidence sufficiently proves that Pacific is the owner of the note.  As such, a factual issue as to ownership does not arise.

The Court is unpersuaded by the Follinses' argument that without the underlying purchase documentation, the 2004 assignments transferred "nothing" to Pacific. (#47 at 4, ¶5)  While it is true that an effective assignment [of a contract right] "transfers to the assignee all the rights and interest which the assignor had in the subject of the assignment *at the time of the assignment*," *see* 14 Mass. Practice §7.122 (3d ed.) (citing *Matthew Cummings v. Grande*, 281 Mass. 546, 549 (1933) (emphasis added)), the assignments serve another purpose.  Like the *NCNB Texas* documents, the significance of the assignments is that they eliminate the risk that the Follinses' Note was transferred to another party, thereby potentially subjecting the Follinses to double liability.   To illustrate, if Aetna/ITT had in fact transferred the Follinses' Note to another entity and not TFS, one can assume that Aetna/ITT would not have given the 2004 assignment relating specifically to the Follinses' Note to Pacific. (#39, Exh. C)  Likewise, it can be assumed that TFS would not have given the assignment to Pacific had TFS actually assigned the Follinses' Note to another entity. (#39, Exh. D)  This logic is strengthened by the fact that no other potential claimant

33

on the Follinses' Note filed a proof of claim in the Follinses' two dismissed bankruptcy proceedings.

Pacific's proof of ownership is bolstered by the 2002 Purchase Agreement between TFS and Pacific. (#54, Exh. A)  Included in that document is a Bill of Sale, which lists the Follinses' loan as part of the portfolio purchased by Pacific. (#54, ¶10, Exh. B)

Unlike *NCNB Texas*, an affidavit from the first tranferee's custodian of records, here TFS, has not been provided.  *NCNB Texas*, 11 F.3d at 1265 ("the affidavit of a custodian of records is sufficient proof, unless the defendant points to evidence in the record supporting a legitimate fear that the plaintiff is not the owner and holder of the note, and that some other party will later appear and demand payment.").   However, for the reasons just discussed, the Court concludes that the Follinses have not raised a legitimate fear that some other party will later appear and demand payment.  As stated above, the record is more than sufficient to support the conclusion that Pacific is the owner of the Note.   Therefore, while the evidence in the present matter is not entirely analogous to *NCNB Texas*, the general principles of that case apply to the facts presented in the instant case.

The determination that Pacific has established ownership is perhaps better

34

exemplified by contrasting it with the *In Re Gavin* case, where promissory note ownership was not established due to insufficient documentary evidence. There, the debtor, Gavin, issued a promissory note in favor of Fleet. As here, the note was transferred from the original holder to a subsequent party. While the note had supposedly been assigned from Fleet to Sovereign Bank, then again from Sovereign Bank to Premier Capital, Premier Capital was unable to produce evidence of the initial assignment. *In Re Gavin*, 319 B.R. at 29-30. The bankruptcy court concluded that the absence of evidence of the initial assignment on the part of Premier Capital resulted in a failure to demonstrate ownership.

In upholding the decision of the lower bankruptcy court, the U.S. Bankruptcy Appellate Panel rejected the plaintiff's claim that the bankruptcy court was required to draw a "reasonable inference" that Premier Capital owned the note, as evidenced by the Fleet loan application, the use of the credit line, and the second assignment from Sovereign Bank to Premier Capital. *In Re Gavin*, 319 B.R. at 32. Because the note was a negotiable instrument, thereby invoking Article 3 of U.C.C., the Court refused to stray from the standard of proof set forth in that Article, which, according to the Court, required direct evidence of the ownership of the note. The Appellate Panel accordingly upheld

summary judgment in favor of the defendant debtor. *In Re Gavin*, 319 B.R. at 32.

Significantly, in a footnote, the BAP opined that because Premier Capital failed to submit affidavits or other direct evidence "tending to prove" that Fleet assigned the note to Sovereign Bank, the Court did not need to consider whether to adopt the reasoning in *NCNB Texas*.

Unlike *In Re Gavin*, Pacific has submitted substantial evidence tending to prove that Aetna/ITT assigned the Follinses' Note to TFS. The affidavits of Pacific's portfolio manager Christopher Foreman, the powers of attorney, the assignments, the copy of the 2002 Purchase Agreement and Bill of Sale between TFS and Pacific, which included the Follinses name in the list of loans in the portfolio, more than suffice to convince the Court to adopt the reasoning of *NCNB Texas* in this instance.

To summarize, Pacific has proven that it is the owner of the Follinses' Note. As such, Pacific's claim has been timely filed under the twenty-year statute of limitation. Moreover, by demonstrating that it is the rightful owner of the Note, Pacific has shown that it is the successor-in-interest to the original payee.

Because Pacific did not appeal the Bankruptcy Court's rulings, the

36

Follinses argue that Pacific's claim on the Note was extinguished. Under the Follinses' logic, the Bankruptcy Court's action in sustaining the Follinses' objection to TSF's claim should be given *res judicata* effect in the instant case. A review of the bankruptcy court documents reveals that in December of 1995 the Follinses were "of the understanding that Transamerica Financial Services is the holder by assignment of note dated September 22, 1987 from the debtors to Aetna Finance Company." (#22 in bankr. 95-14046-CJK) In their objection, the Follinses stated that "[t]he debtors do not object to the amount asserted to be due of $41,948.16." (#22 in bankr. 95-14046-CJK) Rather, the "sole basis" for Follinses' objection to TSF's proof of claim was "the classification of the claim as secured." (#22 in bankr. 95-14046-CJK) In the Final Report and Account which was allowed by the Court, TFS is listed as a creditor with an unsecured claim of $41,948.16. (#54 in bankr. 95-14046-CJK) In sum, the bankruptcy documents reveal that the Follinses were objecting to TFS's status as a secured creditor, and *not* on the grounds that TFS did not have a viable claim. Consequently, the Follinses' *res judicata* argument is unavailing.

The bankruptcy documents constitute an admission, at a minimum, that TFS was listed a creditor of the Follinses with an unsecured claim of $41,948.16. *See Gonzalez v. Walgreens Company,* 918 F.2d 303, 305 (1 Cir.,

37

1990) *quoting United States v. Raphelson*, 802 F.2d 588, 592 (1 Cir., 1986) ("'[A] pleading in one case is not a conclusive judicial admission in a later one, [but] it is treated as an ordinary admission which can be contradicted by other evidence.'").  While these bankruptcy documents may not *per se* bridge the gap in the chain of title, in the absence of evidence to the contrary, they constitute persuasive support for the conclusion that TFS was the rightful owner of the Note secured by the Mortgage in 1995.  Therefore, the Follinses' argument that Pacific cannot claim ownership of the Note because there is no evidence of the transfer from Aetna/ITT to TFS must fail.

## *V. Conclusion and Order*

For all of the foregoing reasons, it is ORDERED that Pacific, LLC's Motion For Summary Judgment (#37) be, and the same hereby is, ALLOWED.  The Cross-Motion For Summary Judgment of Althea and Harold Follins (#42) was denied by electronic endorsement on March 31, 2006.

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

May 24, 2006.