UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW HAVEN SAVINGS BANK,<br><br>            Plaintiff<br><br>v.<br><br>ALTHEA FOLLINS, HAROLD FOLLINS,<br>AETNA FINANCE COMPANY D/B/A<br>ITT FINANCIAL SERVICES,<br>SECOND FEDERAL FUNDING,<br>UNITED STATES OF AMERICA, AND<br>BAY STATE GAS<br><br>            Defendants | Case No. 03-12634 – RCL |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF HAROLD AND ALTHEA FOLLINS TO ALTER /AMEND JUDGMENT AND FOR RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT FOR PACIFIC SECURITY PURSUANT TO FED.R.CIV.P. 59(e)

I.   THE GRANT OF SUMMARY JUDGMENT TO PACIFIC SECURITY ON THE GROUND THAT THE NOTE WAS PROPERLY ATTESTED UNDER G.L.c. 260, §1 WAS ERRONEOUS, LEAVING THE CLAIM WITHIN THE SIX YEAR STATUTE OF LIMITATIONS AND TIME BARRED.

Accepting the propriety of the principle of <u>Christopoulos v. Hemenway,</u> 3 Mass.App.Div. 32 (1951) but rejecting its applicability to the facts at bar ─ and thereby the Follinses' (hereinafter the FOLLINSES) argument that that the Promissory Note at issue (hereinafter the NOTE) was not properly attested by the witnesses (hereinafter the WITNESSES) ─ the Court stated:

> While the attesting witnesses here were corporate employees, they witnessed the signing of the Note in their individual capacity and were not acting as the payee corporate entity. An examination of the Note itself supports this conclusion since the employees' signatures did not include their title, or in any way reflect that they were witnessing the Note in their representative capacity as Aetnea employees. There is no indication that the witnesses had any personal interest in the Note whatsoever. In short, the signatures are readily distinguishable from the one at issue in *Christopoulos*. Pacific should not be precluded from bringing its claim under the twenty-year statute of limitations simply because the Aetna employees served as the attesting witnesses.

On several grounds, the FOLLINSES take issue with both the factual and substantive predicates for the Court's reasoning, including its conclusion that "while the attesting witnesses here were corporate employees, they witnessed the signing of the Note in their individual capacity and were not acting as the payee corporate entity." As such, and as more particularly addressed below, the FOLLINSES request that the Court's ruling for Pacific Security (hereinafter PACIFIC) be reversed.

1. <u>Proper Attestation of a Note Payable to a Corporate Payee under G.L.c. 260, §1 Must Necessarily Exclude Employees of the Payee acting as Witnesses</u>.

In determining whether a promissory note has been properly attested within the purview of G.L.c. 260, §1 — in the context of a note that is drawn to a corporation whose witnesses are its employees — the FOLLINSES submit that the Court's distinction between witnesses who act in a corporate capacity and those who act in an individual capacity is a distinction without a practical difference — given the reasoning behind established Massachusetts precedent for including such notes under Section 1 to provide them with a significantly expanded twenty-year limitation period.

This is because "a corporation is a legal fiction that cannot act at all except through its employees and agents," <u>e.g.</u>, <u>Sunrise Properties, Inc. v. Bacon, Wilson, et al.</u>, 425 Mass. 63 (1997). As such — for the ultimate purposes for which a note is witnessed in the first instance — an "employee witness" can never divorce himself from his status as a corporate employee — and thus his allegiance to his employer and its interests.

Under those circumstances, it is the FOLLINSES position that — in keeping with the reasoning behind the enactment of G.L.c.260, §1 — a corporate employee, as a matter of law, can never be a proper witness to a note payable to his/her employer within the meaning of G.L.c. 260, §1 because there could never be any reliability of having

2

independent and unbiased testimony from such an individual relative to the purposes for which the attestation was given.

This principle was established long before <u>Christopoulos v. Hemenway.</u> In <u>Jourdain v. Sherman,</u> 60 Mass. 139 (1850), the Court refused to accept ─ as competent ─ the testimony of a witness who had become the holder of the note because the maker would not have the opportunity to "to secure to him the reasonable chance of having the testimony of a witness who . . . [could] establish any facts favorable to . . . a defense."

Thereafter, in <u>Church v. Fowle,</u> 142 Mass. 12 (1886), concluding that the note was properly witnessed, the Court observed that "the attestation . . . was not made by the payee or by his procurement . . . ; and that the witness "in writing this note, was as much the agent of the defendant as of the plaintiff . . . ."

In like manner, the Supreme Court of Maine, addressing a substantially similar statute in <u>Shepard v. Davis</u>, 114 Me. 58 (1915), held that "the witness must be some person other than the party to the note." Thus, following this reasoning, the Court in <u>Christopoulos v. Hemenway</u> enunciated the principle that that a payee of a promissory note could not be a proper attesting witness because it would compromise the required "higher degree of authenticity in the means of proving its execution."

As above noted, "a corporation is a legal fiction that cannot act at all except through its employees and agents, <u>e.g.</u>, <u>Sunrise Properties, Inc. v. Bacon, Wilson, et al</u>., 425 Mass. 63 (1997). Under those circumstances, the principles and rationale underlying G.L.c. 260, §1 are no less important — nor can they be disregarded — when the payee is a corporation and the witnesses to its note are its own employees. In this situation, the witnesses and the payee are effectively one in the same — and that identity of interest effectively precludes proper attestation. Indeed, given the policies that lie behind the

extended limitations period that is provided to a properly "witnessed note" under G.L.c.260, §1, to make one rule for an "individual payee" and another rule for a "corporate payee" has no sound basis.

2. <u>The WITNESSES to the NOTE Acted in their Corporate Capacity or, alternatively, PACIFIC SECURITY Failed to Adduce Sufficient Evidence to Establish that the WITNESSES Acted in their Individual Capacity</u>.

As the party seeking to recover under the NOTE, PACIFIC carried several burdens of proof.  First, PACIFIC held the burden to prove that the action on the NOTE was seasonably commenced, e.g., <u>Mendes v. Roche</u>, 317 Mass. 321 (1945); <u>Breen v. Burns</u>, 280 Mass. 222 (1932); <u>Savoie v. Anezis</u>, 55 Mass.App.Dec. 55 (1974)(When a defendant pleads the statute of limitations, the burden is then placed on the plaintiff to prove that he commenced his action with the time limited by law.)

Second, PACIFIC was required to show that the NOTE was properly attested so that its action fell within the 20 year statute of limitations and was timely. e.g., <u>Whitney v. Clary,</u> 145 Mass. 156 (1887)("The burden was then on the plaintiff to prove the material fact that the defendant signed the note in the presence of the attesting witness."); <u>Holden v. Jenkins</u>, 125 Mass. 447 (1878); <u>Swazey v. Allen</u>, 115 Mass. 594 (1874)("The proposition to be established by the plaintiff is that the witness put his name to the note. . . .;" <u>Phillips v. Vorenberg</u>, 259 Mass. 46 (1927).

Finally, given the foregoing and the Court's reasoning, PACIFIC necessarily carried the burden of proof to demonstrate that the WITNESSES were, in fact, <u>not</u> acting in their corporate capacities when they witnessed the NOTE, especially given the undisputed facts that (1) they did so while in the employ of AETNA/ITT, (2) during normal business hours, (3) and in the course of a loan closing that was within the business of their employer to perform.

4

By awarding summary judgment for PACIFIC, the Court ruled, as a matter of law on the existing record, that PACIFIC met that burden; and that the WITNESSES were not acting in their "corporate capacities" when they executed the NOTE. The FOLLINSES submit that such a ruling was erroneous o a number of grounds.

The analysis begins with the Supreme Judicial Court's decision in <u>Wang Laboratories, Inc. v. Business Incentives, Inc.</u>, 398 Mass. 854 (1986) where the Court enunciated the following standards for determining when an employee's conduct is within the scope of his employment:

> [T]he conduct of an agent is within the scope of employment if it is of the kind he is employed to perform [citation omitted], if it occurs substantially within the authorized time and space limits [citation omitted], and if it is motivated, at least in part, by a purpose to serve the employer [citations omitted]. The fact that the predominant motive of the agent is to benefit himself does not prevent the act from coming within the scope of employment as long as the act is otherwise within the purview of his authority [citations omitted].

In the case at bar, there can be no dispute that the second and third tests were met. The WITNESSES signed their names at, and as a part of, the loan closing [¶8 of FOLLINSES Affidavit; ¶13 of FOLLINSES Statement of Material Facts], obviously attesting to the FOLLINSES' signatures on the NOTE to serve their employer's interests as payee of the NOTE. As such, the only remaining issue is whether such an act by the WITNESSES was "of the kind [they] were employed to perform."

The summary judgment record established that the WITNESSES witnessed the NOTE (1) while in the employ of AETNA/ITT, (2) during its normal business hours, (3) and in the course of a loan closing with the FOLLINSES that was within the business of their employer to perform. Under these circumstances, it is also appropriate to conclude that the signatures of the FOLLINSES were witnessed at the direction and procurement

5

of AETNA/ITT as doing so would benefit AETNA/ITT but have been of no concern to the FOLLINSES.

Finally, Wang makes it clear that, even if the predominant motive of the agent was to benefit himself — in the case at bar, to sign in "an individual capacity" (which the FOLLINSES do not concede relative to the WITNESSES) — that circumstance would not prevent the agent from having acted in a representative capacity if "the act is otherwise within the purview of his authority."

As stated above, the WITNESSES executed their signatures during a loan closing between the payee and the FOLLINSES as the borrowers. Whether by express direction, or as a part of AETNA/ITT'S routine practice, that undertaking was within the scope of the WITNESSES' employment. As such, on the record presented and for purposes of meeting the evidentiary standards required of PACIFIC as a summary judgment proponent, that the WITNESSES were acting in their corporate capacity was — or had to be taken against PACIFIC as — clearly presumptive. PACIFIC was then required to adduce legally sufficient evidence to overcome that conclusion and meet its burden to show the contrary.

Nevertheless, the Court reasoned that the WITNESSES did not act in their "corporate capacities" because they failed to include their titles with their signatures. That failure, however — standing alone and without a full explication of the circumstances surrounding such a claimed omission — cannot be sufficiently probative of such a conclusion as their might be a myriad of reasons why no "title" was included — not the least of which was that neither employee had any title. Absent evidence to demonstrate that factual issue, there was thus no legally sufficient evidentiary foundation adduced by PACIFIC to support such a finding. Consequently, to make a presumption of

such a fact against the FOLLINSES was not only unfair but unsupportable on the existing record.

Moreover, in the absence of evidence as to the regular custom and practice of AETNA/ITT and its employees when closing its mortgage loan transactions with its borrowers ― including (i) whether or not it regularly used its employees as witnesses, and/or (ii) when doing so, those employees typically included or omitted their titles with their signatures ― there was no legally sufficient evidentiary foundation to conclude that the omission of any "title" was deliberate — and thus indicative of the fact that the WITNESSES were not acting in a corporate capacity when they witnessed the NOTE. c.f., Hankinson v. Lynn Gas Co, 175 Mass. 271 (1900)("There was ample evidence that the custom of the employe [sic] of the defendant inferably well known to and sanctioned by it, was to drop or toss disused pieces of carbon into the street.").

Finally, the FOLLINSES submit that the presence or absence of any "title" that might have been included with the WITNESSES' signatures — without a fully developed factual record in context — is unavailing, given the Appeals Court's observation in Rubel v. Hayden, Harding & Buchanan, Inc., 15 Mass.App.Ct. 252 (1983) that "the Massachusetts cases have been reticent about ascribing authority because of titles or trappings of office."

In short, it was PACIFIC'S burden to adduce a sufficient evidentiary foundation to carry its burden of proof that the WITNESSES were not acting in a corporate capacity when they signed the NOTE.   The record proffered showed that the WITNESSES witnessed the NOTE (1) while in the employ of AETNA/ITT, (2) during its normal business hours, (3) and in the course of a loan closing with the FOLLINSES that was

within the business of their employer to perform.  It is also clear that the signatures of the FOLLINSES were witnessed at the direction of AETNA/ITT.

Moreover, from other documents produce by PACIFIC during the course of discovery, it appears that AETNA/ITT made a regular practice of having its corporate employees witness the signatures of its borrowers.  This is supported on two grounds.  First, not only was the NOTE witnessed but, as well, both signatures on the mortgage instrument were witnessed — and by the same individual "Leslie Saunders" — notwithstanding that the mortgage was also notarized.  [See ¶7, Affidavit of the FOLLINSES and Exhibits]

Second, attached to the Affidavit of Gordon N. Schultz, Esq. are copies of two additional loan documents that were produced by PACIFIC from the FOLLINSES loan file in response to a Request for Production, namely (1) a mortgage note dated a few weeks earlier and (2) a Financial Statement executed on September 10, 1987 — the same date that the mortgage and NOTE were executed and which supported the loan evidenced by the NOTE.  Both are witnessed and, again, by the same "Leslie Saunders."

In the face of this evidence, the only contrary evidence purporting to show that the WITNESSES acted in an "individual capacity" was the claimed absence of any "title" next to the WITNESSES' signatures — a circumstance already demonstrated above to be legally insufficient on a number of grounds.

In view of all of the foregoing, the FOLLINSES thus submit that whether or not the WITNESSES were acting as employees in their corporate capacity or in their individual capacities was, at very the least, a question of fact requiring further evidence that PACIFIC failed to adduce ─ thus necessarily precluding summary judgment for PACIFIC and requiring summary judgment for the FOLLINSES.

Alternatively, on the existing record, the only conclusion that could have been properly made was that the WITNESSES were acting in their capacity as corporate employees when they attested to the NOTE — compelling a finding to that effect in the absence of PACIFIC having adduced any legally sufficient and competent evidence to the contrary.

In either circumstance, PACIFIC failed in its burden on the existing record. As such, summary judgment for PACIFIC was improper and should have been entered for the FOLLINSES.

        Respectfully submitted

        Althea Follins and Harold Follins
        By their attorneys


        s/Gordon N. Schultz
        BBO #447600
        Schultz & Company
        One Washington Mall
        Boston, MA 02108
        617.723.9090
        SchultzCompany@aol.com

Dated: June 1, 2006